[Civ. No. 23938. Fourth Dist., Div. Two. June 8, 1981.]

ELEANOR A. HARRIS et al., Plaintiffs and Appellants, v.
TROJAN FIREWORKS COMPANY, Defendant and Respondent.

COUNSEL

Peach, Shapiro & Peach and Timothy W. Peach for Plaintiffs and Appellants.

Morris, Polich, Jr., & Purdy, Theodore P. Polich, Jr., and Suzan R. Flamm for Defendant and Respondent.

OPINION

GARST, J.*—

### STATEMENT OF THE CASE

This is an appeal from an order dismissing plaintiffs' complaint. The order of dismissal was entered at the request of defendant Trojan Fireworks Company after defendant's demurrer to plaintiffs' complaint had been sustained. Plaintiffs were granted 30 days to amend their complaint which they declined to do.

*Assigned by the Chairperson of the Judicial Council.

## STATEMENT OF FACTS

Since the appeal arose from an order dismissing the complaint, the facts stated are the facts which are alleged in the complaint.

The complaint is brought in four counts. The first count seeks damages for the wrongful death of James Harris and is brought by his parents. Counts 2 and 3 are brought by two minor children for their personal injuries and count 4 is brought by the mother of the minor children, for reimbursement of medical expenses which were incurred for medical care required for the children as a result of the injuries which they sustained. The children were riding in a car driven by James Harris when it was involved in an accident with a car driven by Anthony Barajas (Barajas).

Barajas was an employee of defendant Trojan Fireworks Company (Trojan).

On Friday, December 21, 1979, at the Trojan manufacturing plant in Rialto, commencing at noon and continuing until 4 p.m., Trojan held a Christmas party for its employees at which, it is alleged, the employees were caused to attend and caused to imbibe large quantities of alcoholic beverages.

Barajas attended the party and became intoxicated to the extent that his ability to drive an automobile was substantially impaired. Nevertheless, he attempted to drive home. In this attempt he was involved in the accident which resulted in the death of James Harris and injury to Dawn and Steven Griffin.

Plaintiffs allege the death of Harris and the injuries of Dawn and Steven Griffin were the result of the accident which was proximately caused by the Barajas' advanced state of intoxication.

## CONTENTIONS

■ Plaintiffs contend that their complaint is sufficient. They contend that Barajas' intoxication, which was the proximate cause of the accident and resulting injuries and death, occurred in the course and scope of his employment so that under the doctrine of respondeat superior his employer, defendant Trojan, is liable for the resulting injuries and wrongful death.

Defendant urges that section 25602 of the Business and Professions Code bars any action against Trojan.[1] Trojan further contends that even if Business and Professions Code section 25602 is not to be interpreted as barring a cause of action based upon principles of respondeat superior, that the respondeat superior doctrine is not here applicable because the accident did not occur until after Barajas had left the defendant's plant and was on his way home.

The issue presented is whether, as a matter of law, the complaint states facts which would support a judgment against Trojan under any theory of liability.

We are of the opinion that the demurrer should have been overruled.

## DISCUSSION

*Respondeat Superior*

As a general rule, a principal is responsible for the acts of his agent; however, an employer is often exempted from liability for injury caused to or by the employee while the employee is traveling to or from work.

---

[1]Subdivisions (b) and (c) of section 25602 of the Business and Professions Code provide: "(b) No person who sells, furnishes, gives or causes to be sold, furnished, or given away, any alcoholic beverage pursuant to subdivision (a) of this section shall be civilly liable .to any injured person or the estate of such person for injuries inflicted on that person as a result of intoxication by the consumer of such alcoholic beverage.

"(c) The Legislature hereby declares that this section shall be interpreted so that the holdings in such cases as Vesely v. Sager (5 Cal.3d 153), Bernhard v. Harrah's Club (16 Cal.3d 313) and Coulter v. Superior Court (21 Cal.3d 144) be abrogated in favor of prior judicial interpretation finding the consumption of alcoholic beverages rather than the serving of alcoholic beverages as the proximate cause of injuries inflicted upon another by an intoxicated person."

Civil Code section 1714 provides:

". . . . . . . . . . . .

"(b) It is the intent of the Legislature to abrogate the holdings in cases such as Vesely v. Sager (5 Cal.3d 153), Bernhard v. Harrah's Club (16 Cal.3d 313), and Coulter v. Superior Court (21 Cal.3d 144) and to reinstate the prior judicial interpretation of this section as it relates to proximate cause for injuries incurred as a result of furnishing alcoholic beverages to an intoxicated person, namely that the furnishing of alcoholic beverages is not the proximate cause of injuries resulting from intoxication, but rather the consumption of alcoholic beverages is the proximate cause of injuries inflicted upon another by an intoxicated person.

"(c) No social host who furnishes alcoholic beverages to any person shall be held legally accountable for damages suffered by such person, or for injury to the person or property of, or death of, any third person, resulting from the consumption of such beverages."

This exemption of employer liability is often referred to as the "going and coming" rule. In workers' compensation cases where the rule has been applied to relieve an employer or its carrier from liability resulting from injuries to the employee, it is often stated that the injury was not incurred "in the course and scope of the employment." (2 Witkin, Summary of Cal. Law (8th ed. 1973) Workmen's Compensation, § 116, p. 947.) In third party liability cases, the negligent employee's employer is often excused from liability under the "going and coming" rule on the rationale that the employer should not be liable for acts of the employee which occur when the employee is not rendering service to his employer, (*Robinson* v. *George* (1940) 16 Cal.2d 238, 244 [105 P.2d 914]) or where the employer has no right of control over the employee (*Harris* v. *Oro-Dam Constructors* (1969) 269 Cal.App.2d 911, 915, 917 [75 Cal. Rptr. 544]).

However, there are numerous exceptions to the foregoing rules.[2] Defendant urges that we should not look to the rationale of workers'

[2]In the field of workers' compensation the case of *Hinojosa* v. *Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150, 156 [104 Cal.Rptr. 456, 501 P.2d 1176], is illustrative. "[T]he so-called going and coming rule composes no formula of automatic application. We have explained that 'this rule ... has long been recognized [to be] "subject to many exceptions" [citing cases]. Indeed, one writer in the field of workmen's compensation has suggested that the exceptions have swallowed the rule. (See Horowitz, Note, 14 NACCA L.J. 36.)' (*Schreifer* v. *Industrial Acc. Com.* (1964) 61 Cal.2d 289, 291 [38 Cal.Rptr. 352, 391 P.2d 832].) No less an authority than Dean Pound urged in 1954, 'A rule which has developed at least six recognized exceptions since it was announced in England in 1908 is evidently, if not moribund, deserving of overhauling as a whole.' (Pound, *Current Article of Special Interest: Workmen's Compensation* (1954) 14 NACCA L.J. 394, 400.) Commentators have severely criticized it. [Fn. omitted.]"

In cases concerning liability to third persons injured by a negligent employee, courts have found many reasons to impose liability on the employer.

A judgment of nonsuit in favor of the employer was reversed where an employee who was hired to work in Yuma, Arizona, as a cement finisher, struck a bicyclist on his way back to his home in Pasadena, California. On occasion the negligent employee had brought equipment to the jobsite in Yuma in his truck at the employer's request; however, at the time of the accident he was not transporting any supplies for his employer. He was, however, transporting a fellow employee whom he had hired at the employer's request. Apparently it had been difficult to obtain cement finishers in Yuma, Arizona, and the employer had requested that he solicit people in Pasadena to come to work in Yuma. Also the employer had furnished gas to the employee for the trip home. Under these circumstances the court held that it was a jury question as to whether or not the trip incidentally or indirectly benefitted the employer so that liability would attach to the employer under the "special errand" exception. (*Harvey* v. *D & L Construction Company* (1967) 251 Cal.App.2d 48, 52 [59 Cal.Rptr. 255].)

A jury verdict in favor of two employees of a general contractor was sustained as against a subcontractor based upon an assault committed by the employees of the subcontractor on two employees of the general contractor. The assault occurred at a construction site approximately four hours after the subcontractor's employees had ter-

compensation cases in determining an employer's liability to third persons incurred by a negligent employee, because of the legislative directive favoring liberal construction of the workers' compensation laws.[3] Presumably this liberal construction is to accomplish a shifting of the loss to the employer, who is in a better position to distribute it and who should bear the burden of the loss as a cost of doing business. (See *Harris* v. *Oro-Dam Constructors, supra*, 269 Cal.App.2d 911, 915.) While it may be desirable that the employer compensate a negligent employee injured by his own negligence, it is equally desirable that the employer compensate an innocent third person injured by a negligent employee where the risk is inherent in or created by the employment. (See *Rodgers* v. *Kemper Constr. Co., supra*, 50 Cal.App.3d 608, 618.)

The propriety of applying the rationale of workers' compensation cases to third party injury fact situations and vice versa is now well established. "Although the test of workmen's compensation law of 'arising out of and in the course of employment' (Lab. Code, § 3600) is not identical with the test of 'scope of employment' under the *respondeat superior* doctrine [citations omitted], one of the principal considerations under compensation law is the benefit to the employer [citations omitted]; both fields of law are concerned with the allocation of the cost of industrial injury; and the two tests are closely related. [Citations omit-

minated their shift. Apparently the employees of the subcontractor had remained at the jobsite, and drank beer while they worked on the personal pickup of one of the employees. The employee of the general contractor was assaulted when he refused to give a ride on a bulldozer to one of the employees of the subcontractor. (*Rodgers* v. *Kemper Constr. Co.* (1975) 50 Cal.App.3d 608 [124 Cal.Rptr. 143].)

In *Boynton* v. *McKales* (1956) 139 Cal.App.2d 777 [294 P.2d 733], an order granting a new trial to the employer was reversed in a case where a verdict was rendered in favor of a third party injured by the employer's intoxicated employee who was on his way home from a company banquet.

In *Richards* v. *Metropolitan Life Ins. Co.* (1941) 19 Cal.2d 236 [120 P.2d 650], a judgment of nonsuit in favor of an employer was reversed where a negligent insurance salesman, on his way to work, injured a third party. The evidence reflected that there were days when the insurance salesman would call on customers, sell policies, collect premiums, deliver policies, etc. before proceeding to work.

Similarly, liability of an employer to an innocent third party for an accident which occurred on an employee's way to work was upheld in *Brelend* v. *Traylor Eng. etc., Co.* (1942) 52 Cal.App.2d 415 [126 P.2d 455]. In that case the employer had sent an employee to California from Pennsylvania to assist in the construction of a kiln. The employer drove, and on the way had an automobile accident, injuring plaintiffs. Travel and subsistence expenses were paid by the employer while the employee was en route to California and the employer also paid the employee for use of the employee's personal car while traveling to the jobsite.

[3]*Church* v. *Arko* (1977) 75 Cal.App.3d 291, 299 [142 Cal.Rptr. 92]; Labor Code, section 3202.

ted.]" (*Hinman* v. *Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 962 [88 Cal.Rptr. 188, 471 P.2d 988].)

The law now recognizes that the entire subject of torts is a reflection of social policies which fix financial responsibility for harm done. As we depart from liability for one's own act or conduct and enter into the arena of vicarious liability, the quest of liability is frequently determined by who is best able to spread the risk of loss through the prices charged for its product or liability insurance. (*Hinman* v. *Westinghouse Elec. Co., supra,* 2 Cal.3d 956, 959-960; *Fields* v. *Sanders* (1947) 29 Cal.2d 834 [180 P.2d 684, 172 A.L.R. 525].) The underlying philosophy which holds an employer liable for an employee's negligent acts is the deeply rooted sentiment that a business enterprise should not be able to disclaim responsibility for accidents which may fairly be said to be the result of its activity. (*Ira S. Bushey & Sons, Inc.* v. *United States* (2d Cir. 1968) 398 F.2d 167; see also Keeton, *Conditional Fault in the Law of Torts* (1959) 72 Harv.L.Rev. 401.)

In the case of *Rodgers* v. *Kemper Constr. Co., supra,* 50 Cal.App.3d 608, this court stated: "Under the modern rationale for *respondeat superior,* the test for determining whether an employer is vicariously liable for the tortious conduct of his employee is closely related to the test applied in workers' compensation cases for determining whether an injury arose out of or in the course of employment. [Citations.] This must necessarily be so because the theoretical basis for placing a loss on the employer in both the tort and workers' compensation fields is the allocation of the economic cost of an injury resulting from a risk incident to the enterprise." (50 Cal.App.3d at p. 619.)

Thus, we think it can be fairly said that liability attaches where a nexus exists between the employment or the activity which results in an injury that is foreseeable.[4] Foreseeable is here used in the sense that the employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among the other costs of the employer's business. (*Rodgers* v. *Kemper Constr. Co., supra,* 50 Cal. App.3d at p. 619.)

---

[4]In *Bonetti* v. *Double Play Tavern* (1954) 126 Cal.App.2d Supp. 848 [274 P.2d 571], the court upheld liability of the Double Play Tavern where the left fielder of a sponsored semiprofessional baseball team, angered at dropping a pop fly, threw the ball out of the field where it hit plaintiff on the head. There, the bar operator selected the manager of the team, furnished uniforms and equipment, and deducted the cost on income tax returns as business expense; however, the players were not otherwise

Applying these standards of business purpose or business activity and foreseeability to the facts of the instant case it appears that there is sufficient connection between the employment or the employer's Christmas party and the employee's negligent act to justify holding the employer financially responsible for the injuries occasioned by the employee's accident. Although the accident occurred away from the employer's premises and presumably after work,[5] we believe that the operable factors giving rise to the subsequent accident at least make a prima facie showing that the accident occurred in the course of Harris' employment with defendant.

It may be inferred that the party was for the benefit of the employer. It may be argued that the purpose of the party was to improve employer/employee relations or to increase the continuity of employment by providing employees with the fringe benefit of a party, or to improve relations between the employees by providing them with this opportunity for social contact. (*Boynton v. McKales, supra*, 139 Cal.App.2d 777, 789.) That Trojan intended for Barajas to attend the party is indicated by the fact that the party was held at work during work hours and Barajas was paid to attend. That Trojan intended for Barajas to consume alcohol is implied from the fact that the employer furnished the alcoholic beverages and it is further alleged that Trojan, its agents and employees caused him to imbibe large quantities of alcoholic beverages. It is further alleged that he became intoxicated at the party, to such an extent that his ability to operate a motor vehicle was substantially impaired. The complaint further alleges that while in this intoxicated condition, and at his place of employment, he entered his automobile and commenced his attempt to drive home.

These facts are very similar to those found in *Boynton v. McKales, supra*, which defendant seeks to distinguish. The plaintiff in the *Boynton* case recovered a judgment against the employer of an intoxicated driver who struck the plaintiff while the employee was on his way home from a company banquet. Defendant attempts to distinguish the *Boynton* case by pointing to the fact that the company banquet in the *Boynton* case occurred after normal working hours thus requiring the

compensated for playing on the team and in no real sense did an employer/employee relationship exist, nevertheless, it was the activity (sponsoring of the team) that led to the injury.

[5]While the record reflects that the party occurred during work hours from 12 noon to 4 p.m., during which time Barajas was presumably paid for work, it is not clear whether his normal work day terminated at 4 p.m. when the party broke up or whether he was still on the payroll at 4:30 p.m. when the accident actually occurred.

employee to make an additional trip to and from the banquet, thus coming within the "special purpose" exception to the going and coming rule.[6] Our reading of the *Boynton* case suggests to us that the pivotal consideration was not whether an extra trip was required to attend the banquet, but whether there was a sufficient business relationship between the employment and the banquet at which the defendant became intoxicated to hold the employer liable for the employee's negligent driving. We offer the following quotation from the *Boynton* case: "The only decisive question is therefore whether the character of the banquet and the employer's relation to it were such that Brooks' attendance could be reasonably considered within the scope of his employment. If there is any substantial conflict in the evidence in this respect or conflicting inferences can reasonably be drawn from it such is a question of fact for the jury." [Citations.] (*Boynton* v. *McKales, supra*, 139 Cal. App.2d 777, 790.)

We hold that plaintiffs have pleaded sufficient facts, which, if proved, would support a jury's determination that Barajas' intoxication occurred at the Christmas party and that his attendance at the party as well as his state of intoxication occurred within the scope of his employment. That he would attempt to drive home while still intoxicated and might have an accident was foreseeable as that term is used in *Rogers* v. *Kemper Const. Co., supra*, 50 Cal.App.3d 608, 618-619.[7]

Reversed.

Gardner, P. J., and Morris, J., concurred.

**GARST, J.,*** Concurring.—I believe that, in addition to stating a cause of action based upon the theory of respondeat superior, the plain-

---

[6] If any distinction were to be made between the facts of the *Boynton* case and the instant case, the instant case would cut in favor of imposing liability. Here, it is alleged that the party occurred at the employer's factory, during working hours, and the employee was paid to attend and encouraged to drink excessively.

In the *Boynton* case, attendance at the party was optional; the party occurred after work, employees were not paid to attend, and presumably the party took place at some location other than the employee's place of employment.

[7] Our holding is not based upon Trojan's furnishing of alcohol to Barajas as a basis of negligent conduct on the part of Trojan. The furnishing of alcohol by Trojan is merely one of the facts appropriately considered in determining if Barajas' intoxication occurred within the scope of his employment at Trojan. (*Boynton* v. *McKales, supra*, 139 Cal.App.2d 777, 790.)

*Assigned by the Chairperson of the Judicial Council.

tiffs' complaint states a cause of action against defendant Trojan for its negligently furnishing Barajas with an excessive amount of alcoholic beverages.

The complaint alleges that Barajas was caused by Trojan to attend the Christmas party and was caused by Trojan to imbibe large quantities of alcoholic beverages knowing that he would be driving home after the party.

It is clear that the trial judge sustained the defendant's demurrer because he felt that subdivisions (b) and (c) of Business and Professions Code section 25602[1] barred plaintiffs' action against defendant based upon its negligent furnishing of alcohol to Barajas. He is correct; however, if I were able to obtain the concurrence of one of my colleagues, I would hold subdivisions (b) and (c) of Business and Professions Code unconstitutional as violative of the equal protection clauses of both the United States and the State of California.

Article I, section 7, subdivision (b), of the California Constitution guarantees to every person that all laws of a general nature shall have a uniform operation and that no citizen, or class of citizens, shall be granted privileges or immunities which, upon the same terms, are not granted to all citizens. The Fourteenth Amendment of the United States Constitution frames a similar commitment, mandating that no state may deny to any person within its jurisdiction the equal protection of the laws.

This principle of equal protection preserved by both state and federal Constitutions does not preclude the state from drawing any distinctions between different groups of individuals, but does require that, at a minimum, persons similarly situated with respect to the legitimate purpose of the law receive like treatment. (*Brown* v. *Merlo* (1973) 8 Cal.3d 855, 861 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505].)

*Legitimate State Purpose*

That the State of California has a legitimate purpose in regulating the sale and consumption of alcoholic beverages seems clear.

Business and Professions Code section 23001 provides in pertinent part: "This division is an exercise of the police powers of the State for

---

[1]See footnote 1 to the main opinion.

the protection of the safety, welfare, health, peace and morals of the people of the State, . . . and to promote temperance in the use and consumption of alcoholic beverages. It is hereby declared that the subject matter of this division involves in the highest degree the economic, social, and moral well-being and the safety of the State and all of its people. All provisions of this division shall be liberally construed for the accomplishment of these purposes."

The dimensions of the cost of alcohol-related accidents and the catastrophic personal and economic impact are profoundly disturbing social phenomena. (*Coulter v. Superior Court* (1978) 21 Cal.3d 144, 154 [145 Cal.Rptr. 534, 577 P.2d 669].)

Nationally, alcohol is associated with over half of the deaths and major injuries suffered in automobile accidents each year. In California alone during 1976 alcohol was found to be the primary collision factor in 28 percent of all fatalities. (*Coulter v. Superior Court, supra*, 21 Cal.3d 144, 154.)

Current figures of the National Safety Council and Department of Transportation show that alcohol-related accidents now account for about 25,000 deaths annually and represent an estimated annual economic cost of over $5 billion. (*Taylor v. Superior Court* (1979) 24 Cal.3d 890, 899 [157 Cal.Rptr. 693, 598 P.2d 854].

*Development of the Law*

Prior to 1971, decisional law did not allow recovery to those injured by an intoxicated person as against the negligent supplier of alcoholic beverages. That decisional law was overturned in *Vesely v. Sager* (1971) 5 Cal.3d 153 [95 Cal.Rptr. 623, 486 P.2d 151]. The *Vesely* court stated: "To the extent that the common law rule of nonliability is based on concepts of proximate cause, we are persuaded by the reasoning of the cases that have abandoned that rule. The decisions in those jurisdictions which have abandoned the common law rule invoke principles of proximate cause similar to those established in this state by cases dealing with matters other than the furnishing of alcoholic beverages. [Citations.] Under these principles an actor may be liable if his negligence is a substantial factor in causing an injury, and he is not relieved of liability because of the intervening act of a third person if such

act was reasonably foreseeable at the time of his negligent conduct.... [Citations.]

".     .     .     .     .     .     .     .     .     .     .     .     .     .

"Insofar as proximate cause is concerned, we find no basis for a distinction founded solely on the fact that consumption of an alcoholic beverage is a voluntary act of the consumer and is a link in the chain of causation from the furnishing of the beverage to the injury resulting from intoxication. Under the above principles of proximate cause, it is clear that the furnishing of an alcoholic beverage to an intoxicated person may be a proximate cause of injuries inflicted by that individual upon a third person. If such furnishing is a proximate cause, it is so because the consumption, resulting intoxication, and injury-producing conduct are foreseeable intervening causes, or at least the injury-producing conduct is one of the hazards which makes such furnishing negligent." (5 Cal.3d 153, at pp. 163-164.) .

In response to *Vesely* and its progeny, the Legislature amended Business and Professions Code section 25602 by adding subdivisions (b) and (c),[2] and amended Civil Code section 1714 at the same time by adding subdivisions (b) and (c) to it.[3]

These amendments seek to accomplish their objective of denying compensation to persons injured by drunk drivers as against those who supplied the drunk driver with alcoholic beverage by modifying the common law which provides that all persons are liable for all injuries proximately occasioned by their negligent conduct. These subdivisions provide immunity to those who supply alcohol to others by eliminating the furnishing of alcohol as a proximate cause of the resulting injury inflicted by the drunken driver.

---

[2]The full text is set forth in footnote 1 of the main opinion.

[3]Prior to its 1978 amendment Civil Code section 1714 read as follows: "Everyone is responsible, not only for the result of his wilful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, wilfully or by want of ordinary care, brought the injury upon himself...."

California Statutes 1978, chapter 929, which added subdivisions (b) and (c) to Business and Professions Code section 25602 also added subdivisions (b) and (c) to Civil Code section 1714. The text of subdivisions (b) and (c) of Civil Code section 1714 is contained in footnote 1 of the main opinion.

*Scope of Inquiry*

Having satisfied myself that there is a legitimate state interest in rendering the highways safer for the general public by regulating the distribution and consumption of alcohol, I now address the scope of review to be accorded these statutory amendments to the Business and Professions Code.

Traditionally, both the United States Supreme Court and the California Supreme Court have applied a two-tiered test in their constitutional analysis of state legislative acts. In equal protection cases which do not involve suspect classifications or the alleged infringement of a fundamental interest, a statute is presumed valid and is upheld if it bears a rational relationship to a legitimate state purpose; however, if the statutory scheme imposes a suspect classification, or a classification which infringes on a fundamental interest, the classification is closely scrutinized and is upheld only if it is necessary for the furtherance of a compelling state interest. (*Weber* v. *City Council* (1973) 9 Cal.3d 950, 958-959 [109 Cal.Rptr. 553, 513 P.2d 601].)

The United States Supreme Court has also recently adopted an intermediate standard of review. In *Craig* v. *Boren* (1976) 429 U.S. 190, 197 [50 L.Ed.2d 397, 407, 97 S.Ct. 451], it was held that "classifications by gender must serve important governmental objectives and be substantially related to the achievement of those objectives."[4]

*Nature of the Right Involved*

Essentially two rights are infringed by the amendments to section 25602. The most apparent right is the right of the injured person to seek redress from all persons whose negligent conduct has contributed to his injury.

---

[4]Professor Gunther of the Stanford Law School in his article *The Supreme Court, 1971 Term* (1972) 86 Harv.L.Rev. 1, 17, points to two relatively recent United States Supreme Court decisions which avoid the traditional "two-tiered" rhetoric and appear to address themselves with the single question: "Is there an appropriate governmental interest suitably furthered by the differential treatment?" (*Weber* v. *Aetna Casualty & Surety Co.* (1972) 406 U.S. 164 [31 L.Ed.2d 768, 292 S.Ct. 1400], and *Police Department of Chicago* v. *Mosley* (1972) 408 U.S. 92 [33 L.Ed.2d 212, 92 S.Ct. 2286].)

New Hampshire appears to have departed from the traditional two-tiered approach in holding unconstitutional, as violative of the equal protection clause, a state statute which sought to limit recoveries in medical malpractice cases. (*Carson* v. *Maurer* (1980) 120 N.H. 925 [424 A.2d 825].)

The second right infringed is the right of all people to be secure in their health and safety which objective, I believe, is fostered and flows from the prophylactic effect that imposition of liability will have in reducing the number of drunk and intoxicated drivers on the highways and thereby the number of persons who would otherwise fall victim to their negligent driving.

The right to recover full compensation from all persons negligently responsible for one's injuries has not been held to be a fundamental interest so that its infringement alone would invite close constitutional analysis of the infringing legislative act.[5] Nevertheless, this right, at least to the catastrophically injured individual is a substantial right based on sound public policy and it has frequently been the intended victim of legislation which has been found to be violative of the equal protection clauses.

The expression of public policy favoring full compensation from all persons contributing to one's injury or damage is found in Civil Code section 1714 as it existed since it was enacted in 1872 and until subdivisions (b) and (c) were added in 1978. It provided: "Every one is responsible, . . . for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person . . . ."

That our courts have considered this right to be substantial is reflected in the decisions which have discussed it. It was the impetus of this right to adequate compensation for injury that resulted in the decision which abolished the fine distinctions in the standard of care owed by a landowner to different categories of persons on his property (*Rowland* v. *Christian* (1969) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]); and to the abolishment of interspousal immunity (*Klein* v. *Klein* (1962) 58 Cal.2d 692 [26 Cal.Rptr. 102, 376 P.2d 20]), governmental immunity (*Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457]), and charitable immunity (*Malloy* v. *Fong* (1951) 37 Cal.2d 356, 366 [232 P.2d 241]; *Silva* v. *Providence Hospital of Oakland* (1939) 14 Cal.2d 762 [97 P.2d 798]).

In *Jess* v. *Herrmann* (1979) 26 Cal.3d 131 [161 Cal.Rptr. 87, 604 P.2d 208], our Supreme Court reasoned that the main objective of the financial responsibility law was to assure monetary protection to that tragically large group of persons who suffer grave injury through the

---

[5]See footnote 2 of *Brown v. Merlo, supra*, 8 Cal.3d 855, 862.

negligent use of highways by others and to assure that the victim be actually compensated for his loss instead of having an empty claim against a judgment proof defendant. (26 Cal.3d 131, 138-139.)

This public policy of California favoring full compensation for negligently inflicted injuries was the motivating force behind the Supreme Court's decision in *Brown* v. *Merlo, supra,* 8 Cal.3d 855, which held the guest statute unconstitutional.

In the case of *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899], the California Supreme Court retained the joint and several liability rule for joint tortfeasors in order that injured persons might have a better opportunity to obtain full recovery for their injury from all persons negligently responsible for their injuries.

Similarly, the Supreme Court reasoned that "fundamental justice" required abolishing the doctrine of contributory negligence because it worked as a bar to fair recovery for injuries inflicted as a result of the joint negligence of the claimant and another negligent party. (*Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 812-813 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393].)

In fact, it was the dual objective of affording adequate and full compensation to those injured by drunk drivers and the objective of promoting highway safety that resulted in *Vesely, Bernhard* and *Coulter* which are now sought to be abrogated by the recent amendments to Business and Professions Code section 25602.

*Improper Classification*

Business and Professions Code section 25602, subdivisions (b) and (c), create at least two classifications of persons or entities that are afforded distinct treatment different from the general public.

First, it creates a favored class consisting of those who supply or furnish alcoholic beverages and it creates the disfavored class of those injured by drunken drivers.

The suppliers of alcohol are favored because they are provided with immunity from the consequences of their negligent conduct.

As we have observed in the preceding discussion of rights, it is the law that in other areas of activity and endeavor all persons are liable for the injuries proximately caused by their negligent acts.

One who supplies another with drugs other than alcohol is liable for the foreseeable consequences of injury inflicted by the person under the influence of drugs. If one who provides a known reckless driver with an automobile (*Rocca* v. *Steinmetz* (1923) 61 Cal.App.102, 109 [214 P. 257]) or a juvenile with a firearm (*Reida* v. *Lund* (1971) 18 Cal.App. 3d 698, 704 [96 Cal.Rptr. 102, 70 A.L.R.3d 721]) cannot escape liability by saying that the reckless driver or juvenile caused the resulting injury, how then can immunity be provided to a negligent supplier of alcohol who thereby renders the driver of a car incompetent to drive it?

While the standard of care owed to others is ordinarily a question of fact for the jury, when that standard is prescribed by statute, conduct below the standard is negligence per se. (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 531, p. 2795.) However, a rebuttable presumption of negligence arises if the injury or harm results from violation of a statute which was designed to prevent that type of injury, and the violation proximately caused that injury or harm. (Evid. Code, § 669; CALJIC No. 3.45.)

Business and Professions Code section 25602, subdivision (a) provides: "Every person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage to any habitual or common drunkard or to any obviously intoxicated person is guilty of a misdemeanor."

This section "was adopted for the purpose of protecting members of the general public from injuries to person and damage to property resulting from the excessive use of intoxicating liquor." (*Vesely* v. *Sager, supra*, 5 Cal.3d 153, 165.)

Ordinarily, civil liability would accrue to the person who violates this statute and thereby causes harm to another. By statutory classification, subdivisions (b) and (c) provide suppliers of alcoholic beverages with civil immunity for their criminal acts.

A number of cases have held legislation unconstitutional when the result of the legislation was to accord a privilege to a favored class. In

*Cossack* v. *City of Los Angeles* (1974) 11 Cal.3d 726, 734 [114 Cal.Rptr. 460, 523 P.2d 260], our Supreme Court invalidated a municipal ordinance concerning pinball machines. The court said: """ . . . A statute makes an improper and unlawful discrimination if it confers particular privileges upon a class arbitrarily selected from a larger number of persons all of whom stand in the same relation to the privileges granted and between whom and the persons not so favored no reasonable distinction or substantial difference can be found justifying the inclusion of the one and the exclusion of the other.""" (*Cossack* v. *City of Los Angeles, supra*, 11 Cal.3d 726, 734, quoting from *Looff* v. *City of Long Beach* (1957) 153 Cal.App.2d 174, 181 [314 P.2d 518].)

In *State Board* v. *Thrift-D-Lux Cleaners* (1953) 40 Cal.2d 436, 443-444 [254 P.2d 29], the Supreme Court condemned legislation[6] which promoted the welfare of "a special class of the body politic" and which promoted only "the private advantage of a small group, not a class, composing a small percentage of the population."

An act exempting certain motor vehicles from insurance requirements was held unconstitutional in *Smith* v. *Cahoon* (1931) 283 U.S. 553 [75 L.Ed. 1264, 51 S.Ct. 582]; an act allowing certain milk dealers to sell at lower than the regulated price was held unconstitutional in *Mayflower Farms* v. *Ten Eyck* (1936) 297 U.S. 266 [80 L.Ed. 675, 56 S.Ct. 457]; a statute permitting mutual, but not stock, insurance companies to act through salary representatives was held unconstitutional in *Hartford Co.* v. *Harrison* (1937) 301 U.S. 459 [81 L.Ed. 1223, 57 S.Ct. 838]; a statute regulating motels, but not hotels, with respect to outdoor rate advertising was held unconstitutional in *Gawzner Corp.* v. *Minier* (1975) 46 Cal.App.3d 777 [120 Cal.Rptr. 344, 80 A.L.R.3d 726]; a statute which permitted only certain types of business entities to engage in foreign currency transactions was held unconstitutional in *O'Kane* v. *Catuira* (1963) 212 Cal.App.2d 131 [27 Cal.Rptr. 818, 94 A.L.R.2d 487].

Other states have held that arbitrary and discriminatory classifications which limit the right of tort victims (i.e., make this class disfavored) are violative of constitutional standards. (See, e.g., *Haymes* v. *Catholic Bishop of Chicago* (1968) 41 Ill.2d 336 [243 N.E.2d 203, 207, 38 A.L.R.3d 473] (damage limitation of $10,000 for tort action against a nonprofit school held unconstitutional); *Treece* v. *Shawnee*

---

[6](A statute purporting to fix the minimum price that could be charged by dry cleaners.)

*Community Unit School Dist. No. 84* (1968) 39 Ill.2d 136 [233 N.E.2d 549] (damage limitation in tort case against public school district held unconstitutional); *Grubaugh* v. *City of St. Johns* (1970) 384 Mich. 165 [180 N.W.2d 778, 44 A.L.R.3d 1095] (statute requiring claims against governmental entities to be filed within 60 days of the accident was held unconstitutional as violative of the due process clause).[7]

In a recent trilogy of cases the United States Supreme Court addressed the problem of statutes limiting the rights of illegitimate survivors and the survivors of illegitimates.

In *Levy* v. *Louisiana* (1968) 391 U.S. 68 [20 L.Ed.2d 436, 88 S.Ct. 1509], the United States Supreme Court held a state statute which denied illegitimates a cause of action for the wrongful death of mother unconstitutional as a violation of the equal protection clause. (*Levy* v. *Louisiana, supra*, at p. 71 [20 L.Ed.2d at p. 439].)

In *Glona* v. *American Guarantee & Liability Ins. Co.* (1968) 391 U.S. 73 [20 L.Ed.2d 441, 88 S.Ct. 1515], it held unconstitutional a state statute which denied the mother of an illegitimate child a cause of action for the wrongful death of her child.

In *Weber* v. *Aetna Casualty & Surety Co., supra*, 406 U.S. 164 [31 L.Ed.2d 768, 92 S.Ct. 1400], it held constitutionally invalid a statute which denied workmen's compensation benefits to the illegitimate survivors of a workman killed on the job.

That subdivisions (b) and (c) of Business and Professions Code section 2560.2 have created a favored class was anticipated in *Vesely* v. *Sager*: "Defendant's arguments that the question of civil liability for tavern keepers should be left to future legislative action is faulty in two respects. First, liability has been denied in cases such as the one before us solely because of the judicially created rule that the furnishing of alcoholic beverages is not the proximate cause of injuries resulting from intoxication. As demonstrated, *supra*, this rule is patently unsound and totally inconsistent with the principles of proximate cause established in other areas of negligence law. Other common law tort rules which were determined to be lacking in validity have been abrogated by this court [citations], and there is no sound reason for retaining the common law

---

[7]While *Grubaugh* was decided as violative of the due process clause rather than the equal protection clause, in the area of equal treatment the analysis under either section is substantially the same. (*Bolling* v. *Sharpe* (1954) 347 U.S. 497 [98 L.Ed. 884, 74 S.Ct. 693].)

rule presented in this case." (*Vesely* v. *Sager, supra,* 5 Cal.3d 153, 166.)

It bears repetition that the basic policy of this state set forth by the Legislature in section 1714 of the Civil Code is that everyone is responsible for an injury caused to another by his want of ordinary care or skill in the management of his property. (*Bernhard* v. *Harrah's Club* (1976) 16 Cal.3d 313, 325 [128 Cal.Rptr. 215, 546 P.2d 719].)

As in Newton's law of physics, which tells us that "for every action there is an equal and opposite reaction," so also in our society when one class is favored there is a corresponding class which is disfavored. In creating a favored class of persons to whom immunity is granted for their negligent acts a disfavored class, is created. This class consists of the persons injured by drunk drivers. These innocent and injured third persons are denied in their right to recover full compensatory damages from *all* persons who have negligently contributed to their injury because they have no cause of action against the negligent suppliers.

"In determining the scope of the class singled out for special burdens or benefits, a court cannot confine its view to the terms of the specific statute under attack, but must judge the enactment's operation against the background of other legislative, administrative and judicial directives which govern the legal rights of similarly situated persons. As the United States Supreme Court recognized long ago: 'The question of constitutional validity is not to be determined by artificial standards [confining review 'within the four corners' of a statute]. What is required is that state action, whether through one agency or another, or through one enactment or more than one, shall be consistent with the restrictions of the Federal Constitution.' [Citations.] . . ." (*Brown* v. *Merlo, supra,* 8 Cal.3d at p. 862; original italics; fns. omitted.)

Therefore, I conclude that subdivisions (b) and (c) of Business and Professions Code section 25602 create an improper classification by creating both a favored class (dispensers of alcoholic beverages) and a disfavored class (persons injured by drunk drivers) which is inconsistent with the background of other legislative and judicial directives.

### Rational Connection

Even where legislation does not fall within a classification which subjects it to close scrutiny it is unconstitutional, when on analysis, it can

be said that the classifications drawn by the Legislature are not rationally related to the statutory purpose of the statute. (*Brown* v. *Merlo, supra*, 8 Cal.3d 855, 872.)

While a state has broad powers when it comes to making classifications it may not draw a line which constitutes an invidious discrimination against a particular class. "Though the test has been variously stated, the end result is whether the line drawn is a rational one." (*Levy* v. *Louisiana, supra*, 391 U.S. 68, 71 [20 L.Ed.2d at p. 439, 88 S.Ct. at p. 1571].)

If we accept as the laudible objective of these amendments the protection of the general public from injury and damage resulting from the excessive use of alcohol, we come to the heart of the issue, which is, "Does providing immunity to the one who furnishes alcoholic beverages reduce the likelihood that an injury will result to an innocent user of the highway or otherwise?" I believe that the contrary is true.

It is my opinion that removing liability from one who serves or furnishes alcoholic beverage to a habitual or common drunk or to an obviously intoxicated person works against the objective of providing safe highways. I believe that the terms habitual or common drunkards, used in the statute, have reference to alcoholics, who by definition are people who have lost their individual ability to control or regulate their consumption of alcohol. If the consumer of alcohol has no ability to regulate his consumption of alcohol, how is the public protected from the harm to be occasioned by him when he becomes intoxicated unless the person who supplies or furnishes him with alcohol is held responsible?

Section 25602, subdivision (a) prohibits the furnishing of alcohol to an obviously intoxicated person. An obviously intoxicated person is one who by reason of the amount of alcohol he consumed, has impaired his judgment and reason. Again, if the consumer of alcohol has surrendered his judgment and reason to a state of alcoholic intoxication, who is left to protect the public from his further intoxication and the consequences of his foreseeable conduct unless the person who financially benefits from supplying him with additional alcoholic beverage is held responsible in a meaningful way and induced thereby to refrain from further contributing to his state of incapacity and the likelihood of resulting harm and injury to others.

It seems to me, that when one is rendered immune from the natural and foreseeable consequence of his conduct, a substantial incentive to act in a responsible manner is removed.

Section 25601, subdivision (a) which prohibits the selling or furnishing of alcoholic beverage to a habitual or common drunkard or to any obviously intoxicated person has existed in one form or another since 1889. In this form and without the imposition of civil liability following from its breach, it has been singularly ineffective in curbing the carnage which has taken place on our highways.

A rule which holds a supplier of alcoholic beverage liable does not render the consumer less liable. A drunk driver remains fully responsible for the consequences of his driving. Such a rule merely provides that where both the driver and the supplier are negligent, they are jointly and severally responsible for damages occasioned to an innocent third party. (*American Motorcyle Assn.* v. *Superior Court, supra*, 20 Cal.3d 578.)

That a rule of liability, rather than immunity, fosters responsible conduct and achieves the legislative objective of providing safe highways, is shown in the reasoning of Justice Richardson where he says: "We think, in short, that the policy of preventing future harm identified by us in *Rowland* is served by requiring the exercise of reasonable restraint by the social host . . . ." (*Coulter* v. *Superior Court, supra*, 21 Cal.3d 144, 154.

*Fairness*

I perceive the rule of liability for fault to be fair. In all other areas of conduct the negligent wrongdoer is liable for the injury and damage that occurs to others as the result of the foreseeable consequences of his negligent conduct.

In fact, in many areas, liability has attached without fault, as a socially desirable means of allocating the loss. In such instances it has been reasoned that the industry which enjoys the profits, and can best distribute the loss should initially bear the loss. (*Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 63 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049].)

One who furnishes alcohol to an obviously intoxicated person or who furnishes an excessive amount of alcohol to one who is about to drive, is not without fault. To the extent that responsibility for the resulting harm is shared with the consuming driver, liability should also be shared. (*American Motorcycle Assn.* v. *Superior Court, supra*, 20 Cal.3d 578.)

A supplier will be able to distribute the loss occasioned by his negligent conduct by the acquisition of insurance, the premiums of which will be distributed to his customers by increased prices. By this method the industry which enjoys the profits and occasions the risk, shoulders a share of the responsibility for harm occasioned by that risk. By imposing financial liability to persons injured, the responsibility for insuring that alcoholics and intoxicated persons are not served will be placed on a person who is capable of, and has the ability to exercise restraint and judgment, the provider of the alcoholic beverages.

For the foregoing reasons I would hold subdivisions (b) and (c) of Business and Professions Code section 25602 unconstitutional.

A petition for a rehearing was denied June 30, 1981.