[No. B158537. Second Dist., Div. Eight. Jan. 23, 2003.]

BARBARA BUSSARD, Plaintiff and Appellant, v. MINIMED, INC., Defendant and Respondent.

COUNSEL

Law Offices of Robert M. Tessier and Robert M. Tessier for Plaintiff and Appellant.

Booth, Mitchel & Strange, William F. Rummler and Christopher C. Lewi for Defendant and Respondent.

OPINION

RUBIN, J.—Appellant Barbara Bussard appeals from summary judgment for respondent Minimed, Inc. After review, we hold the "going-and-coming" exception to the doctrine of respondeat superior does not apply to an employee while she is driving home after becoming sick at work from exposure to pesticide fumes.

PROCEDURAL AND FACTUAL BACKGROUND

On March 22, 2000, respondent Minimed hired a pest control company to spray pesticide overnight to eliminate fleas at respondent's facility. Around 7:00 a.m. the next day, Minimed clerical employee Irma Hernandez arrived for work. She noticed a funny smell similar to "Raid." By 10 o'clock, she felt ill, with a headache, nausea, and tightness in her chest. At noon, she told two supervisors she did not feel well enough to continue working and wanted to go home. One supervisor offered to send her to the company doctor, but Hernandez declined the offer, while another supervisor asked whether she felt well enough to drive home, and she said yes. (Eventually, nine workers went home early feeling ill and 22 employees sought medical care either that day or later for their exposure to the pesticide.)

Hernandez drove home shortly after noon. While in route, she rear-ended appellant Barbara Bussard, who was stopped at a red light. Hernandez told the police officer who responded to the accident scene that she had felt dizzy and lightheaded before the accident.[1]

Appellant sued Hernandez (who is not a party to this appeal) and respondent Minimed alleging a single cause of action for negligence for her

---

[1]Respondent objected below to admission of Hernandez's statement to the officer because it is contained in an inadmissible accident report. (Veh. Code, § 20013.) Respondent failed, however, to get a ruling from the trial court on the objection, thus failing to preserve the issue for appeal. (*Sambrano v. City of San Diego* (2001) 94 Cal.App.4th 225, 236-238 [114 Cal.Rptr.2d 151] [evidentiary objections waived on appeal if the trial court does not rule on them]; but see *Biljac Associates v. First Interstate Bank* (1990) 218 Cal.App.3d 1410, 1419-1420 [267 Cal.Rptr. 819] [evidentiary objections preserved even if trial court does not rule on them].)

personal injuries and property damage. She claimed respondent was vicariously liable as Hernandez's employer under the doctrine of respondeat superior because Hernandez was acting within the course and scope of her employment when she was driving home ill from pesticide exposure.[2]

Respondent moved for summary judgment. It argued the "going-and-coming" rule meant Hernandez was not within the course and scope of her employment during her commute home. Accordingly, it should not be held vicariously liable under respondeat superior.

The court agreed. It noted the pesticide had not incapacitated Hernandez to the point of rendering her irrational. Thus, her exposure to it did not justify disregarding the going-and-coming rule to make respondent vicariously liable for her as she drove home sick. This appeal followed.

STANDARD OF REVIEW

■ "Summary judgment is granted when a moving party establishes the right to the entry of judgment as a matter of law. [Citation.] In reviewing an order granting summary judgment, we must assume the role of the trial court and redetermine the merits of the motion. In doing so, we must strictly scrutinize the moving party's papers. The declarations of the party opposing summary judgment, however, are liberally construed to determine the existence of triable issues of fact. All doubts as to whether any material, triable, issues of fact exist are to be resolved in favor of the party opposing summary judgment. While the appellate court must review a summary judgment motion by the same standards as the trial court, it must independently determine as a matter of law the construction and effect of the facts presented. [Citation.] [¶] A defendant moving for summary judgment meets his burden of proof showing that there is no merit to a cause of action if that party has shown that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. [Citation.]" (*Cochran v. Cochran* (2001) 89 Cal.App.4th 283, 287 [106 Cal.Rptr.2d 899].)

---

[2]Appellant argued as an alternative theory to support her single cause of action that Minimed was directly negligent, but our reversal on vicarious liability means we cannot resolve that theory. (See Code Civ. Proc., § 437c, subd. (f)(1) [may not grant summary adjudication of an issue when it does not dispose of a complete cause of action].) As an aside, we note that even if one assumes respondent bore an independent duty to protect the general public from Hernandez, her supervisors asked about her ability to drive and offered her medical assistance, but she insisted she was fine and declined their help. Short of taking her car keys from her (which we are not implying should have happened), we do not see what more the supervisors could reasonably have done to stop Hernandez from getting behind the wheel. Accordingly, if appellant's direct negligence theory had come to us as a separate cause of action, we would have handled it with less forbearance than its procedural posture currently compels.

(2) "[H]ow the parties moving for, and opposing, summary judgment may each carry their burden of persuasion and/or production depends on which would bear what burden of proof at trial. . . . [I]f a plaintiff who would bear the burden of proof by a preponderance of evidence at trial moves for summary judgment, he must present evidence that would require a reasonable trier of fact to find any underlying material fact more likely than not—otherwise, he would not be entitled to judgment as a matter of law, but would have to present his evidence to a trier of fact. By contrast, if a defendant moves for summary judgment against such a plaintiff, he must present evidence that would require a reasonable trier of fact not to find any underlying material fact more likely than not—otherwise, he would not be entitled to judgment as a matter of law, but would have to present his evidence to a trier of fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 851 [107 Cal.Rptr.2d 841, 24 P.3d 493], italics and fn. omitted.)

## DISCUSSION

██ Under the doctrine of respondeat superior, an employer is ordinarily liable for the injuries its employees cause others in the course of their work. Respondeat superior imposes liability whether or not the employer was itself negligent, and whether or not the employer had control of the employee. The doctrine's animating principle is that a business should absorb the costs its undertakings impose on others. As one court described the doctrine, "Under the theory of respondeat superior, an employer is vicariously liable for an employee's torts committed within the scope of employment. [Citations.] This theory is justified as ' "a deliberate allocation of a risk. The losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business." ' [Citation.] The employer is liable not because the employer has control over the employee or is in some way at fault, but because the employer's enterprise creates inevitable risks as a part of doing business." (*Bailey v. Filco, Inc.* (1996) 48 Cal.App.4th 1552, 1558-1559 [56 Cal.Rptr.2d 333]; see also *Hinman v. Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 960 [88 Cal.Rptr. 188, 471 P.2d 988] [" 'The principal justification for the application of the doctrine of *respondeat superior* in any case is the fact that the employer may spread the risk through insurance and carry the cost thereof as part of his costs of doing business.' [Citation.] Thus, it must be deemed settled in California that in accordance with the principal justification for the doctrine, the employer's liability extends to the risks inherent in or created by the enterprise." (Original italics.)].)

The doctrine's application requires that the employee be acting within the course of her employment, which case law defines expansively. "In California, the scope of employment has been interpreted broadly under the respondeat superior doctrine. For example, '[t]he fact that an employee is not

engaged in the ultimate object of his employment at the time of his wrongful act does not preclude attribution of liability to an employer.' [Citation.] Thus, acts necessary to the comfort, convenience, health, and welfare of the employee while at work, though strictly personal and not acts of service, do not take the employee outside the scope of employment. [Citation.] More-over, ' "where the employee is combining his own business with that of his employer, or attending to both at substantially the same time, no nice inquiry will be made as to which business he was actually engaged in at the time of injury, unless it clearly appears that neither directly nor indirectly could he have been serving his employer." [Citations.]' [Citation.] It is also settled that an employer's vicarious liability may extend to willful and malicious torts of an employee as well as negligence. [Citation.] Finally, an employee's tortious act may be within the scope of employment even if it contravenes an express company rule and confers no benefit to the employer. [Citations.]" (*Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1004 [47 Cal.Rptr.2d 478, 906 P.2d 440].)

■ Despite the doctrine's wide reach, courts have not defined it so broadly as to include an employee's daily commute. "Case law has established the general rule that an employee is outside the scope of his employment while engaged in his ordinary commute to and from his place of work. [Citation.] This principle is known as the 'going-and-coming rule' and is based on several theories. One is that the employment relationship is suspended from the time the employee leaves his job until he returns. Another is that during the commute, the employee is not rendering services to his employer." (*Caldwell v. A.R.B., Inc.* (1986) 176 Cal.App.3d 1028, 1035 [222 Cal.Rptr. 494]; see *Harris v. Trojan Fireworks Co.* (1981) 120 Cal.App.3d 157 [174 Cal.Rptr. 452] (*Harris*) [same].)

The going-and-coming rule is not ironclad, however, and allows for several exceptions. One exception applies when an employee endangers others with a risk arising from or related to work. In determining whether such danger arises from or is related to work, case law applies a foreseeability test. Our Supreme Court describes this type of foreseeability, which is different from the foreseeability of negligence, as employees' conduct that is neither startling nor unusual. " 'One way to determine whether a risk is inherent in, or created by, an enterprise is to ask whether the actual occurrence was a generally foreseeable consequence of the activity. . . . "[F]oreseeability" as a test for respondeat superior merely means that in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business. [Citations.]' . . . [Such a test is] useful because it reflects the central justification for respondeat superior:

that losses fairly attributable to an enterprise—those which foreseeably result from the conduct of the enterprise—should be allocated to the enterprise as a cost of doing business." (*Farmers Ins. Group v. County of Santa Clara, supra,* 11 Cal.4th at pp. 1003-1004, italics omitted.)

This test has been applied to employees who got into car accidents on the way home after drinking alcohol at work. Courts have found a sufficient link between the drinking and the accidents to make the collisions neither startling nor unusual, and thus foreseeable under respondeat superior. For example, in *Childers v. Shasta Livestock Auction Yard, Inc.* (1987) 190 Cal.App.3d 792 [235 Cal.Rptr. 641] (*Childers*), an employee got into an accident on the way home after drinking at work with a supervisor's permission. The appellate court found the accident was foreseeable, explaining " 'foreseeability' as a test for respondeat superior merely means that in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business. [Citations.] In other words, where the question is one of vicarious liability, the inquiry should be whether the risk was one "that may fairly be regarded as typical of or broadly incidental" to the enterprise undertaken by the employer. [Citation.]' " (*Id.* at pp. 803-804, italics omitted.) Applying such principles, *Harris, supra,* 120 Cal.App.3d 157, found a "sufficient connection" between an employer's holiday party and an employee's auto accident "to justify holding the employer financially responsible for the injuries occasioned by the employee's accident. *Although the accident occurred away from the employer's premises and presumably after work,* we believe that the operable factors giving rise to the subsequent accident at least make a prima facie showing that the accident occurred in the course of [the employee's] employment . . . ." (*Id.* at p. 164, italics added and fn. omitted.)

Moreover, as demonstrated by the italicized language in *Harris* imposing liability for an after-hours accident away from the jobsite, liability follows the employee until the work-spawned risk dissipates. The *Childers* court explained, "We conclude . . . respondeat superior liability is properly applied where an employee undertakes activities within his or her scope of employment that cause the employee to become an instrumentality of danger to others even where the danger may manifest itself at *times and locations remote from the ordinary workplace.* To pick an obvious hypothetical example, suppose an employee manufacturing radioactive fuel becomes contaminated on the job and later contaminates nonemployees while playing basketball at a gym far from the jobsite, causing them injury. In this example, plainly the risk of injury is created by the enterprise; we have no doubt the enterprise should fairly bear the cost of injury. So long as the risk

is created within the scope of the employee's employment, the scope of employment must follow the risk so long as it acts proximately to cause injury." (*Childers, supra,* 190 Cal.App.3d at pp. 804-805, italics added.)

Hernandez suffered pesticide exposure at work to which she attributed illness and impaired driving.[3] That an employee might not be fit to drive after breathing lingering pesticide fumes for several hours is not such a startling or unusual event that we find a car accident on Hernandez's commute home was unforeseeable. Hence, the trial court erred in finding the going-and-coming rule barred appellant's claim of respondeat superior. Indeed, the going-and-coming rule was an analytical distraction. The thrust of appellant's claim for vicarious liability was that Hernandez was an "instrumentality of danger" because of what had happened to her at work. (Cf. *Childers, supra,* 190 Cal.App.3d at pp. 804-805 [describing an employer's vicarious liability for an employee who exposed the public to contamination acquired on the job].) Although Hernandez's decision to drive home gave respondent an opening to raise the going-and-coming rule, the rule did not apply because her decision was a fortuity that must not obscure appellant's central claim that Hernandez's job had contributed to the accident. Thus, summary judgment for respondent was improper.

Respondent argues the foreseeability exception to the going-and-coming rule does not apply because it was not negligent. In support, respondent points to the absence of evidence that it contributed in any negligent manner to the underlying pesticide exposure. It also cites the uncontested fact that its supervisors diligently inquired into Hernandez's ability to drive before she went home. Respondent contrasts its seeming blamelessness with decisions such as *Childers* and *Harris* imposing vicarious liability for drunken employees, suggesting liability attached to the employer in those decisions in part because the employer bore some responsibility for the employee's intoxication. Whatever merit respondent's argument might have in defeating appellant's theory that respondent was directly liable to her for ordinary negligence—a theory we need not address (see fn. 2, *ante*)—it does not apply to vicarious liability. Foreseeability of a risk arising from or connected to work requires no more than a causal connection between a work-related event and the employee's subsequent act causing injury. (*Childers, supra,* 190 Cal.App.3d at pp. 803-804.) Here, evidence of such a connection existed.

Finally, respondent contends appellant did not raise her foreseeability argument below, thus waiving it. We disagree. Appellant argued to the trial

---

[3]Respondent objected to admission of Hernandez's belief that her exposure to the pesticide caused her symptoms. According to respondent, such a belief constituted an expert opinion beyond Hernandez's abilities. Respondent failed, however, to obtain a ruling from the trial court on its objection. As the court did not rule on the objection, it was not preserved for appeal. (See fn. 1, *ante*.)

court that the going-and-coming rule did not apply because Hernandez was driving home for a work-related illness and thus not engaged in her ordinary daily commute. Consistent with her argument, appellant moved for summary adjudication (which the court denied) that her going home ill from pesticide exposure was within the course and scope of her employment. Thus, whether or not the label ("foreseeability") that appellant attaches to her argument might be new, her key point is not: the going-and-coming rule did not apply. Accordingly, we find no waiver.

### DISPOSITION

The judgment is reversed and the court is directed to enter a new and different order denying respondent Minimed, Inc.'s motion for summary judgment. Appellant to recover her costs on appeal.

Cooper, P. J., and Boland, J., concurred.