629 So.2d 914 (1993)
CARROLL AIR SYSTEMS, INC., a Florida corporation, Appellant/Cross-Appellee,
v.
Brenda GREENBAUM, as Personal Representative of the Estate of Raymond Tyrone Fields, deceased, Appellee/Cross-Appellant.
No. 91-3240.
District Court of Appeal of Florida, Fourth District.
December 1, 1993.
Motion for Rehearing, Rehearing and Certification Denied January 21, 1994.
*915 John Beranek of Aurell, Radey, Hinkle, Thomas & Beranek, Tallahassee, and Mark R. Boyd of Heinrich, Gordon, Batchelder, Hargrove, Weihe & Gent, Fort Lauderdale, for appellant/cross-appellee.
Jeffrey D. Fisher, West Palm Beach, and Scott Trell, Miami, for appellee/cross-appellant.
Motion for Rehearing, Rehearing En Banc and Certification Denied January 21, 1994.
WARNER, Judge.
Appellant Carroll Air Systems, Inc., asks us to reverse a judgment in favor of Appellee Brenda Greenbaum for $85,000 compensatory damages and $800,000 punitive damages for the wrongful death of her son caused by the drunken driving of a Carroll Air employee. It claims that the employee was not in the course and scope of his employment at the time of the fatal accident and that, in any event, the employer cannot be liable for the furnishing of liquor to its employee, citing section 768.125, Florida Statutes (1989). In addition, because the jury did not find that the employee should be liable for punitive damages, it contends that it cannot be found to be responsible for these damages. We affirm as to all issues, including those raised on cross-appeal.
Brenda Greenbaum's son was killed in a collision with John Mills' automobile shortly after midnight on September 21, 1985. At the time of the accident, Mills was returning from a dinner dance held in connection with a regional meeting of the American Society of Heating, Refrigerating and Air Conditioning Engineers, Inc. (ASHRAE). The meeting was a three day affair where members met to discuss technical issues and vote on society officers. Several Carroll Air employees were in attendance. The other employees and officers were all staying at the hotel for each of the nights. Mills, however, elected to drive between his home in Plantation and the hotel in Fort Lauderdale during the convention. While the president of the company and his son stated that they did not know that Mills was not spending the nights at the hotel, there was evidence in the record which supported the conclusion that they knew or should have known that he was not staying at the hotel. All of Mills' expenses to attend the meeting were paid for by the company.
On the night of the accident, Mills had drinks at the dinner and then joined Mr. Carroll and others from the company as well as some customers and competitors of the company in the hotel bar where they remained until 11:30 or 12:00. Mr. Carroll picked up one bar tab for the group, and Mr. Carroll's son, also an officer with the company, picked up another. These bar tabs were deducted as business expenses by Carroll Air, as was its custom. The company encouraged its employees to entertain its customers, including the purchasing of drinks.
While Carroll and his son testified that they did not know how many drinks Mills consumed and that they did not observe that he was impaired, other persons contradicted this, indicating that Mills was slurring his words. Mr. Carroll left the group earlier than Mr. Mills who later on knocked on Mr. Carroll's room door to find out the number of Mr. Carroll's son's room.
On Mills' way home that evening, while travelling at a speed between 86 and 97 miles per hour in a 45 mile per hour zone, he ran a stop sign and crashed into the car in which the decedent was riding. According to expert testimony, Mills' blood alcohol level was consistent with having consumed between eight and thirteen one-ounce drinks. As a *916 result of the accident, Mills pled no contest to criminal charges and served a prison sentence.
Greenbaum filed suit against Carroll Air alleging that it was vicariously liable for compensatory and punitive damages in connection with the accident. The claim for liability for punitive damages was based on three allegations: (1) that Carroll Air knew or should have known that Mills was drunk and should not have driven from the business meeting that night; (2) that Carroll Air encouraged its travelling salesmen to drink with customers and reimbursed them for their expenses in this regard; and (3) that Mills was a supervisor in the company and Carroll Air would be directly liable for punitive damages. As to the last ground, the trial court directed a verdict against the plaintiff, finding that there was no evidence showing that Mills was in a managerial capacity with the company. Thus, the case went to the jury on vicarious liability for punitive damages, and the jury found in favor of the plaintiff on the issue of both compensatory and punitive damages.
While the appellant argues extensively that Mills was not in the course and scope of his employment when he was returning home after the ASHRAE meeting, there was competent substantial evidence to support the jury's conclusion that he was. Carroll Air told its employees to attend ASHRAE functions because of their business benefits, and several company employees were at this particular regional meeting, including Mr. Carroll, the president. Mills' expenses at the meeting were paid for by the company. Mills travelled a substantial amount on company business, and his car expenses were reimbursed, including mileage. Because he called on many customers, he did not report to the Carroll Air office every morning but frequently travelled straight from his home to his appointments. Similarly, at the end of the day he frequently returned home without reporting to the office. His mileage expenses for the month of the meeting were paid by the company. Thus, an inference can be made that the expenses of travelling to and from his home during the ASHRAE meeting were paid by the company. Social entertainment at these meetings as well as in other settings was an established business practice of Carroll Air as a means of securing and keeping customers. Cocktails purchased at such gatherings were deducted as business expenses. Based upon these facts, there was evidence upon which a reasonable jury could have rejected appellant's argument that the evening in question was purely social and not in furtherance of the employer's interest, and we find no error in its determination. Furthermore, given the evidence supporting the position that the meeting and activities thereafter were within the business interests of the employer, case law supports the position that Mills was within the course and scope of his employment when travelling to and from the meeting. See Merwin v. Kellems, 78 So.2d 865 (Fla. 1955); Whetzel v. Metropolitan Life Ins. Company, 266 So.2d 89 (Fla. 4th DCA 1972); see also Advanced Diagnostics v. Walsh, 437 So.2d 778 (Fla. 1st DCA 1983) (discussing worker's compensation "going and coming" rule).
Courts across the country are divided on the issue of whether an employer is liable for injuries to third parties under similar circumstances. See David M. Holliday, Annotation, Intoxicating Liquors: Employer's Liability for Furnishing or Permitting Liquor on Social Occasion, 51 A.L.R.4th 1048 (1987). However, there are cogent policy reasons for fixing liability on the employer for injuries to third persons in cases such as this. They are succinctly expressed in Harris v. Trojan Fireworks Co., 120 Cal. App.3d 157, 174 Cal. Rptr. 452 (1981):
The law now recognizes that the entire subject of torts is a reflection of social policies which fix financial responsibility for harm done. As we depart from liability for one's own act or conduct and enter into the arena of vicarious liability, the quest of liability is frequently determined by who is best able to spread the risk of loss through the prices charged for its product or liability insurance. (Hinman v. Westinghouse Electric Company, supra, 2 Cal.3d 956, 959-960, 88 Cal. Rptr. 188, 471 P.2d 988; Fields v. Sanders (1947) 29 Cal.2d 834, 180 P.2d 684.) The underlying philosophy which holds an employer liable *917 for an employee's negligent acts is the deeply rooted sentiment that a business enterprise should not be able to disclaim responsibility for accidents which may fairly be said to be the result of its activity. Ira S. Bushey & Sons, Inc. v. United States, (2 Cir. 1968), 398 F.2d 167; see also Keeton, A Conditional Fault in the Law of Torts, 72 Harv.L.Rev. 401.)
In the case of Rodgers v. Kemper Constr. Co., supra, 50 Cal. App.3d 608, 124 Cal. Rptr. 143, this court stated:
Under the modern rationale for respondeat superior, the test for determining whether an employer is vicariously liable for the tortious conduct of his employee is closely related to the test applied in workers' compensation cases for determining whether an injury arose out of or in the course of employment. [Citations omitted.] This must necessarily be so because the theoretical basis for placing a loss on the employer in both the tort and workers' compensation fields is the allocation of the economic cost of an injury resulting from a risk incident to the enterprise. (50 Cal. App.3d at p. 619, 124 Cal. Rptr. 143.)
Id., 174 Cal. Rptr. at 455-456.
Having found no error in the jury's determination that Mills was in the course and scope of his employment at the time of the accident, we also find that the standard of Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla. 1981) was met and the punitive damage award is affirmed. Mercury Motors holds that an employer may be held liable for vicarious punitive damages under respondeat superior when, in addition to the willful and wanton misconduct by the employee, there is some independent fault or negligence on the part of the employer. Id. at 549. Appellant argues that, despite the rule of Mercury Motors, where the fault of the employer is serving alcoholic beverages to an employee, section 768.125, Florida Statutes precludes liability of the employer. That statute provides:
A person who sells or furnishes alcoholic beverages to a person of lawful drinking age shall not thereby become liable for any injury or damage caused by or resulting from the intoxication of such person.
In the instant case the "fault" of the employer was not in the furnishing of the drinks but in its knowledge, actual or constructive, that Mills was intoxicated and was not in a condition to drive. Carroll Air was not merely a social host at the meeting in which Mr. Mills imbibed excessively. Unlike the social host, an employer has a far greater ability to control the actions of its employees. Thus, this case is more analogous to Alexander v. Alterman Transport Lines, Inc., 387 So.2d 422 (Fla. 1st DCA 1980), which held that an employer was liable for punitive damages based on the willful, wanton, or outrageous conduct of its employee because of its negligence in allowing its employee truck driver to take charge of and drive its truck when it knew or should have known that the employee was intoxicated. Here, Carroll Air could be found liable for punitive damages when it did not prevent Mills from driving away from the meeting in an intoxicated condition. See also Gariup Const. Co. v. Foster, 519 N.E.2d 1224 (Ind. 1988). Contra Stottle v. Brown Group, Inc., 801 S.W.2d 479 (Mo. App. 1990).[1]
Appellant also contends that the verdict was improper because it did not assess punitive damages against Mills, yet it did assess punitive damages against appellant on a vicarious liability theory. If the jury had found that Mills was not guilty of wanton and willful conduct in driving while intoxicated, we would agree. See Montgomery Ward & Co. v. Hoey, 486 So.2d 1368 (Fla. 5th DCA 1986). However, the question posed to the jury on the verdict form was "Do the circumstances of this case warrant your discretionary imposition of punitive damages against the defendant John C. Mills?" It is impossible to tell from the answer to the question whether the jury believed that Mills' conduct was not willful or that other circumstances of *918 the case, including the fact that Mills had already served a prison term for the crime and was financially insolvent, influenced the jury in not awarding punitive damages against Mills. The jury was appropriately instructed on punitive damages, and it is presumed that the jury followed the court's instructions. Eley v. Moris, 478 So.2d 1100 (Fla. 3d DCA 1985). Given the particular wording of this jury question we cannot find that the verdict was improper.
We find no reversible error in the remaining points on appeal and cross-appeal and affirm as to those issues.
Affirmed.
GLICKSTEIN and FARMER, JJ., concur.
NOTES
[1] While Dowell v. Gracewood Fruit Company, 559 So.2d 217 (Fla. 1990), discusses an employer's liability under section 768.125 when it was a social host at a company picnic, the drunken tortfeasor in that case was not a company employee at the time of the party and was therefore merely a social guest, a fact which we were able to glean from the briefs on appeal in Dowell v. Gracewood Fruit Co., 544 So.2d 1131 (Fla. 4th DCA 1989).