643 So.2d 46 (1994)
Michael BARDY, Appellant,
v.
WALT DISNEY WORLD COMPANY, Appellee.
No. 94-171.
District Court of Appeal of Florida, Fifth District.
September 23, 1994.
*47 Anthony P. Prieto of Anthony P. Prieto, P.A., Tampa, for appellant.
Robert E. Bonner of Eubanks, Hilyard, Rumbley, Meier & Lengauer, P.A., Orlando, for appellee.
GRIFFIN, Judge.
Appellant, Michael Bardy ["Bardy"], seeks review of a summary final judgment entered in favor of appellee Walt Disney World Company ["Disney"] in his action for negligence.
Bardy, a Disney employee, claims he became voluntarily intoxicated while attending an employee party sponsored by Disney and held on Disney's premises. Before the party ended, Bardy went to his car in the parking lot to lie down. A security guard employed by Disney discovered Bardy sleeping in the car. Despite Bardy's protestations that he was too intoxicated to drive, Bardy claims the guard ordered him to move the car and leave the premises. The guard also threatened that if Bardy was not gone when he returned, the guard would have Bardy arrested. Some time later, Bardy attempted to drive the car off the premises, but after driving only about 500 feet, the car struck a light pole and Bardy was injured. He sued Disney to recover damages for his injuries.
Our reason for reversing best finds expression in Professor William L. Prosser's Handbook of The Law of Torts, § 56 at 340-41 (4th Ed. 1971):
Because of this reluctance to countenance "nonfeasance" as a basis of liability, the law has persistently refused to recognize the moral obligation of common decency and common humanity, to come to the aid of another human being who is in danger, even though the outcome is to cost him his life. Some of the decisions have been shocking in the extreme. The expert swimmer, with a boat and a rope at hand, who sees another drowning before his eyes, is not required to do anything at all about it, but may sit on the dock, smoke his cigarette, and watch the man drown. A physician is under no duty to answer the call of one who is dying and might be saved, nor is anyone required to play the part of Florence Nightingale and bind up the wounds of a stranger who is bleeding to death, or to prevent a neighbor's child from hammering on a dangerous explosive, or to remove a stone from the highway where it is a menace to traffic, or a train from a place where it blocks a fire engine on its way to save a house, or even to cry a warning to one who is walking into the jaws of a dangerous machine. The remedy in such cases is left to the "higher law" and the "voice of conscience," which, in a wicked world, would seem to be singularly ineffective either to prevent the harm or to compensate the victim.
* * * * * *
Thus far the difficulties of setting any standards of unselfish service to fellow men, and of making any workable rule to cover possible situations where fifty people might fail to rescue one, has limited any tendency to depart from the rule to cases where some special relation between the parties has afforded a justification for the creation of a duty, without any question of setting up a rule of universal application.
As Prosser also explains:
If there is no duty to come to the assistance of a person in difficulty or peril, there is at least a duty to avoid any affirmative acts which make his situation worse. When we cross the line into the field of "misfeasance," liability is far easier to find... . There may be no duty to take care of a man who is ill or intoxicated, and unable to look out for himself; but it is another thing entirely to eject him into the *48 danger of a railroad yard; and if he is injured there will be liability.
Id. at 343. See also Pence v. Ketchum, 326 So.2d 831 (La. 1976).
Assuming, as we must, for purposes of this appeal, the plaintiff's version of events, Disney is not free from all liability as a matter of law. Bardy was an employee of Disney, an invitee on Disney property for social purposes (at least until the invitation was revoked by the guard), and the alcohol he drank (thirty 16 oz. cups of beer) had been supplied by Disney. More important, it was an employee or agent of Disney who allegedly ejected him from the property, ordering him to move the motor vehicle. The driving of a motor vehicle by an intoxicated person is not only obviously perilous to the driver but to others as well, and is a violation of law. Given all these circumstances in combination, unless the security guard reasonably believed Bardy could legally and safely drive, Disney had a duty to refrain from ordering him to do so. Theoretically, Disney could be held to some percentage of fault, if a jury found that the security guard's conduct caused Bardy's injuries.
REVERSED and REMANDED.
DAUKSCH, J., concurs.
DIAMANTIS, J., dissents, with opinion.
DIAMANTIS, Judge, dissenting.
I respectfully dissent because, in my view, this case is controlled by section 768.125, Florida Statutes (1989).
When viewed in the light most favorable to appellant Michael Bardy, the record evidence established that, after finishing his shift one morning, Bardy, a Disney employee, decided to attend an employee party sponsored by Disney and held on Disney's premises. While attending the party, Bardy drank beer which was furnished by Disney, and he became voluntarily intoxicated. Before the party ended, Bardy went to his car in the parking lot to lie down. When a Disney security guard discovered Bardy a few hours later still sleeping in the car, the guard ordered Bardy to move the car and leave the premises. Despite Bardy's protestations that he was too intoxicated to drive, the guard told Bardy that he would be arrested if he was not gone when the guard returned. Approximately 45 minutes later, Bardy attempted to drive the car off the premises, but after driving only about 500 feet, he struck a light pole and was seriously injured.
In an apparent attempt to distinguish prior decisions of the appellate courts of this state,[1] the majority characterizes the allegedly negligent act of Disney's security guard as one of misfeasance rather than nonfeasance. In my view, regardless of how the security guard's act is characterized, the result reached by the majority impermissibly circumvents the effects of section 768.125, Florida Statutes (1989), which was enacted to limit vendor liability for injuries caused by the intoxication of other persons.
As it did at the time of Bardy's accident, section 768.125 provides:
Liability for injury or damage resulting from intoxication.  A person who sells or furnishes alcoholic beverages to a person of lawful drinking age shall not thereby become liable for injury or damage caused by or resulting from the intoxication of such person, except that a person who willfully and unlawfully sells or furnishes alcoholic beverages to a person who is not of lawful drinking age or who knowingly serves a person habitually addicted to the use of any or all alcoholic beverages may become liable for injury or damage caused by or resulting from the intoxication of such minor or person.
§ 768.125, Fla. Stat. (1993).
In Bankston v. Brennan, 507 So.2d 1385 (Fla. 1987), our supreme court concluded that *49 the provisions of section 768.125 did not apply to a social host who served alcoholic beverages to a minor. Importantly, the court also refused to create a common-law cause of action against social hosts, reasoning:
We do not hold that we lack the power to [create such a cause of action], but we do hold that when the legislature has actively entered a particular field and has clearly indicated its ability to deal with such a policy question, the more prudent course is for this Court to defer to the legislative branch. The issue of civil liability for a social host has broad ramifications, and as we recently observed, "of the three branches of government, the judiciary is the least capable of receiving public input and resolving broad public policy questions based on a societal consensus." The legislature has evidenced, through chapter 562 and section 768.125 for example, a desire to make decisions concerning the scope of civil liability in this area. While creating such a cause of action may be socially desirable as petitioners cogently argue, the legislature is best equipped to resolve the competing considerations implicated by such a cause of action.

Bankston, 507 So.2d at 1387 (emphasis added; citation and footnote omitted).
I find support for my position in decisions of other state courts which have applied this principle to preclude common-law claims similar to the one filed by Bardy in this case.[2]See DeBolt v. Kragen Auto Supply, Inc., 182 Cal. App.3d 269, 227 Cal. Rptr. 258 (1986); McCall v. Villa Pizza, Inc., 636 A.2d 912 (Del. 1994). In DeBolt v. Kragen Auto Supply, a minor guest attended a company-sponsored beach party with a company employee. When the guest became intoxicated and disorderly, company officials ordered her to leave the party, although they knew that she would drive her car because it was her only available means of transportation. The guest subsequently caused a serious accident in which two people were killed. The decedents' survivors sued the company, contending that the company was negligent, not in selling or furnishing alcoholic beverages to the guest, but in ordering the guest to leave "knowing she was intoxicated and not able to safely drive and knowing she would drive her car nevertheless, and furthermore not attempting to supply or actually supplying a safer alternative." DeBolt, 227 Cal. Rptr. at 260. Rejecting the plaintiffs' argument that their negligence action was grounded in the company's misfeasance rather than its nonfeasance, the court ruled that the plaintiffs' *50 claim was barred by California's dram shop act:
By thus presenting the issue, [the plaintiffs] vigorously urge us to ignore the statutory framework concerning serving and consuming alcohol and its attendant immunities. However, this we refuse to do. Whether we agree or would have chosen to do otherwise, the Legislature in 1978 specifically abrogated our Supreme Court's application of common law negligence principles to alcohol consumption-related injuries... .
[The plaintiffs] attempt to characterize [the company's] "fault" as ordering [the guest] to leave and as failing to provide alternative and safer means of transportation, and thereby hope to escape the statute's limitation. However, "[t]he effect of the statute cannot be avoided by alleging the wrong, not as furnishing the alcohol," but as forcing a person to leave a party or failing to provide safe transportation.
DeBolt, 227 Cal. Rptr. at 260-61 (quoting Andre v. Ingram, 164 Cal. App.3d 206, 210 Cal. Rptr. 150, 152 (1985)).
Similarly, in McCall v. Villa Pizza, a tavern bouncer forcibly removed an incoherent, extremely intoxicated patron from the tavern premises. The bouncer apparently did not call a taxi or notify the tavern's manager of the patron's intoxicated condition as required by tavern policy. The patron drove his car off the premises and was seriously injured in a single-car accident. Relying on DeBolt, the Delaware court affirmed the summary judgment entered in favor of the tavern on the patron's claim of negligence, stating:
Similarly, we decline to permit [the patron] to avoid our dram shop liability holdings by alleging negligence, not in [the tavern's] serving of alcohol, but in its forcible removal of him from the premises and without providing safe transportation.
McCall, 636 A.2d at 915. See also D'Amico v. Christie, 71 N.Y.2d 76, 524 N.Y.S.2d 1, 5, 518 N.E.2d 896, 900 (1987) (quoting Kelly v. Gwinnell, 96 N.J. 538, 476 A.2d 1219, 1227 (1984)) ("[T]he very existence of a Dram Shop Act constitutes a substantial argument against expansion of the legislatively-mandated liability").
I submit that, if liability is to be imposed in the situation involved in this case, it must be imposed by the legislature, which has the authority to set forth the exact duty which social hosts, restaurants, and bars owe to intoxicated guests. If section 768.125 is to be amended, it must be done legislatively, not judicially.
Accordingly, I would affirm the summary judgment which the trial court entered in this case.
NOTES
[1] See Reed v. Black Caesar's Forge Gourmet Restaurant, 165 So.2d 787 (Fla. 3d DCA 1964), cert. denied, 172 So.2d 597 (Fla. 1965) (restaurant owed no duty to refuse to deliver car to obviously intoxicated patron who subsequently drove into Biscayne Bay and drowned). See also Blocker v. WJA Realty Ltd. Partnership, 559 So.2d 291 (Fla. 2d DCA 1990) (operator of valet parking service breached no duty to plaintiff by returning car to obviously intoxicated owner whose negligent driving subsequently caused injury to plaintiff); Goodell v. Nemeth, 501 So.2d 36 (Fla. 2d DCA 1986) (homeowner was not liable for injuries to intoxicated guest who shot himself in head with loaded gun provided by homeowner).
[2] In this case, Bardy claimed that Disney was liable for Bardy's injuries under the premises liability theory recognized in Estate of Starling v. Fisherman's Pier, Inc., 401 So.2d 1136 (Fla. 4th DCA), rev. denied, 411 So.2d 381 (Fla. 1981). In Fisherman's Pier, the court held that, under limited circumstances, a landowner may have a duty to safeguard an invitee upon its premises from extreme danger, even where the invitee, through his own negligence or voluntary intoxication, has allowed himself to be exposed to the danger. Id. at 1137-38 (citing Restatement (Second) of Torts § 314A (1965)). We note that the Fisherman's Pier decision predates Bankston. Further, the Fisherman's Pier decision does not make clear whether section 768.125 was in effect at the time of the invitee's death. Section 768.125 (formerly section 562.51) became effective on May 23, 1980. See Ch. 80-37, Laws of Fla.

Importantly, Bardy did not rely on Carroll Air Systems v. Greenbaum, 629 So.2d 914 (Fla. 4th DCA 1993), in which the court held that, under principles of respondeat superior, an employer could be liable for injuries to third persons caused by an employee who was voluntarily intoxicated and acting in the course of his employment when the injuries occurred. Under this theory, Bardy would have to show that he was acting in the course of his employment when he was injured, a showing which would raise the issue of whether worker's compensation is Bardy's exclusive remedy against Disney. See, e.g., Wishart v. Laidlaw Tree Service, Inc., 573 So.2d 183 (Fla. 2d DCA 1991); § 440.11, Fla. Stat. (1989). See also Childers v. Shasta Livestock Auction Yard, Inc., 190 Cal. App.3d 792, 235 Cal. Rptr. 641 (1987).
Interestingly, the case of Harris v. Trojan Fireworks Co., 120 Cal. App.3d 157, 174 Cal. Rptr. 452 (1981), upon which the Carroll Air court relied, has been described as an anomaly by a different division of the same appellate court. See DeBolt v. Kragen Auto Supply, Inc., 182 Cal. App.3d 269, 227 Cal. Rptr. 258, 262 n. 5 (1986). Despite criticism that it avoids statutory immunities, the holding of Harris apparently remains viable. See Childers v. Shasta Livestock Auction Yard, Inc., 190 Cal. App.3d 792, 235 Cal. Rptr. 641, 649 (1987). The Carroll Air decision similarly has been criticized as an "attempt to eviscerate [section] 768.125." Douglas R. Wight, Liquor Vendor Liability: Is Florida Becoming a DeFacto Dram Shop State?, Fla. B.J., June 1994, at 93, 95.