896 So.2d 839 (2005)
Tracey HERNANDEZ, Appellant,
v.
TALLAHASSEE MEDICAL CENTER, INC., d/b/a Tallahassee Community Hospital, Appellee.
No. 1D04-0458.
District Court of Appeal of Florida, First District.
February 23, 2005.
*840 Mark E. Walker of Broad and Cassel, Tallahassee, for Appellant.
Brian S. Duffy and Brandice D. Dickson of McConnaughhay, Duffy, Coonrod, Pope & Weaver, P.A., Tallahassee, for Appellee.
ERVIN, J.
Tracey Hernandez appeals a final order dismissing her two-count complaint filed against her employer, Tallahassee Medical Center, Inc. (hospital), which alleged (1) a breach of duty by the hospital to protect her from a risk of foreseeable harm, and (2) intentional infliction of emotional stress. We conclude that the lower court correctly dismissed the complaint as to both counts and affirm.
The complaint stated that Hernandez was employed by defendant hospital as a surgical nurse, during which employment she suffered from an epileptic-seizure disorder, of which defendant was aware; that her treating neurologist had informed defendant that Hernandez should not drive to work, either while on call or on regularly scheduled shifts. The defendant was also aware that plaintiff "had a difficult time getting to the hospital quickly because she was a single mother and had to take her child to daycare before coming to the hospital." In order to accommodate her condition, defendant instructed plaintiff she could obtain taxi service to and from work while she was on call, and that defendant would reimburse her for such service. Defendant further informed plaintiff that her job was in jeopardy because of the time she had previously missed, and it was her responsibility to work on "call" and to arrive at work on time. Defendant did not provide plaintiff with reimbursement for taxi service to and from the hospital on regularly scheduled work days.[1] Thereafter, on or about July 23, 2002, Hernandez called in sick, explaining *841 she was suffering from headaches and other symptoms which she believed to be consistent with an impending seizure. Notwithstanding plaintiff's request to be excused from work that day, the defendant ordered her to be there "right away," although it knew plaintiff had to take her daughter to daycare and would likely have to drive herself. In compliance with her employer's directions, Hernandez proceeded to work in her automobile, suffered a seizure, lost control of her car, and suffered serious and permanent injuries, resulting in her request for damages, costs, and other related expenses.
We evaluate an order dismissing a complaint for failure to state a cause of action by the de novo standard. See Sarkis v. Pafford Oil Co., Inc., 697 So.2d 524, 526 (Fla. 1st DCA 1997). An appellate court also is required to "`assume that all material factual allegations are true and . . . draw all reasonable inferences in favor of the pleader.'" Welker v. S. Baptist Hosp. of Fla., 864 So.2d 1178, 1182 (Fla. 1st DCA 2004) (quoting Clark v. Gumby's Pizza Sys., Inc., 674 So.2d 902, 904 (Fla. 1st DCA 1996)).
Turning first to the count alleging intentional infliction of emotional distress, we note that the conduct necessary to sustain such claim must be "`so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.'" Metro. Life Ins. Co. v. McCarson, 467 So.2d 277, 279 (Fla.1985) (adopting standard set forth in Restatement (Second) of Torts, § 46 cmt. d (1965)). Under the circumstances, we conclude that defendant's direction to its employee that she report to work "right away," despite its awareness that she might be suffering symptoms of a serious condition, did not exceed all bounds of decency within the contemplation of case law addressing intentional infliction of emotional distress.
The more substantial question is whether the count pleading common-law negligence by reason of a breach of a duty based on the special relationship of employer-employee states a cause of action. In this regard, plaintiff's theory of liability is founded primarily upon the following rule of law approved in Kaisner v. Kolb, 543 So.2d 732, 735 (Fla.1989): "Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." As the supreme court later explained in McCain v. Florida Power Corporation, 593 So.2d 500, 502 (Fla.1992), a foreseeable zone of risk means conduct that foreseeably creates a broader zone of risk that poses a general threat of harm to others, rather than the extent to which such conduct may foreseeably cause the specific injury that actually occurred.
The above comments lend support to plaintiff's argument that the hospital should have reasonably foreseen that if she had complied with the order to come to work immediately, she would more than likely be forced to drive herself and suffer a seizure and the consequential accidental injuries. Nevertheless, "a legal duty is not established by evidence of foreseeability alone." Aguila v. Hilton, Inc., 878 So.2d 392, 396 (Fla. 1st DCA), rev. denied, 891 So.2d 549 (Fla.2004). There must also be evidence or allegations showing that, under the Kaisner-McCain rule, defendant's conduct created or controlled the risk. Id. at 396-97. In Aguila, the court concluded that the defendant owed no legal duty to plaintiff on facts showing that a security guard employed by the motel directed an inebriated person and other occupants to leave a room, and that the inebriate got into his truck and collided with an automobile *842 occupied by plaintiff's decedent. The court explained that it did not follow that the act of ordering all of the persons from the room created the risk because, among other things, they were not forced to drive away from the premises; some could have elected to remain in other areas of the motel, or to employ other means of transportation from the motel than by operating a vehicle.
In reaching its conclusion, the court was careful to point out that no special relationship existed between the motel and the intoxicated driver, which could give rise to a duty to control his conduct so as to prevent him from causing physical harm to another. In other words, "implicit in the special relationship exception is the proposition that the special relationship `must include the right or the ability to control another's conduct.'" Id. at 399 (quoting Garrison Retirement Home Corp. v. Hancock, 484 So.2d 1257, 1261 (Fla. 4th DCA 1985)).
In the absence of a special relationship between the parties, we would ordinarily consider this case controlled by the Aguila decision. Thus, if there were no such relation, defendant's directions to plaintiff that she come immediately to defendant's premises could not be said to have created any foreseeable zone of risk of harm to the plaintiff, who could have freely disregarded the instruction. As a result, even if she had chosen to follow the request, and as a consequence was injured, her injuries could not be said to be caused by a breach of duty, because defendant was not in a position to control the risk to which plaintiff was exposed. Nevertheless, the complaint in the case at bar clearly alleged the existence of a special relationship, and the essential question we must answer is whether defendant's conduct, by reason of that special relationship, created a foreseeable zone of risk thereby giving rise to a duty defendant owed to its employee to avert the threatened harm. For the reasons stated hereafter, we conclude that it did not.
In reaching our decision, we have been aided by pertinent provisions of the Restatement of the Law of Torts and Agency. The fact that a defendant may realize that some action may be necessary for another's aid or protection does not by itself impose a duty upon the defendant to take such action. See Restatement (Second) of Torts § 314 (1965). As explained in Comment d. to the section, the above rule applies only where the peril in which the defendant knows the other is placed is not due to an active force under his or her own control. For example, if A sees B, a blind man, about to step into the street in front of an approaching automobile, and A takes no action to prevent the threatened harm, and B is run over and hurt, A is under no duty to prevent B from proceeding into the street. On the other hand, if A, a factory owner, sees B, a young child who has wandered into the factory about to approach a piece of machinery and does nothing, A may be negligent if he permits machinery to continue in motion which by reasonable care he could stop before it injures the child.
The Reporter's Notes point out in Comment a. an exception to the rule stated in section 314 if a special relation exists between the actor or defendant and the other which could then impose upon the actor the duty to take affirmative precaution for the aid and protection of the other. Section 314A enumerates some of those relationships, including the duty owed by a common carrier to its passengers, an innkeeper to his or her guests, a possessor of land to members of the public invited to enter, and one who voluntarily takes custody of another. Section 314B, relating to the duty of an employer to protect an endangered or hurt employee, addresses *843 the special relation most pertinent to the case on review, and provides in part:
(1) If a servant, while acting within the scope of his employment, comes into a position of imminent danger of serious harm and this is known to the master or to a person who has duties of management, the master is subject to liability for a failure by himself or by such person to exercise reasonable care to avert the threatened harm.
(Emphasis added.) The comment to section 314B states that it duplicates section 512 of the Restatement (Second) of Agency, and refers the reader to the comments under that section. The comments under section 512 clearly explain that the existence of a special relation alone does not necessarily impose a duty on an employer to protect its employee from the danger of harm. Thus, similar to circumstances in which a special relation does not exist, the question of an employer's liability appears to turn on the extent of control or lack thereof over his or her employee. As noted in Comment b. to the section: "The situation created by the sudden illness of an employee on business premises is quite different from that of a traveling salesman, stricken at a distant place, in which case there might well be no duty." Restatement (Second) of Agency § 512 (1958) (emphasis added).
It is important to observe that the duty the employer owes to the employee under sections 314B and 512 is conditioned upon the employee "acting within the scope of his employment." As a consequence, if the employee's actions cannot be said to be within the scope or course of his or her employment, no duty is placed on the employer to exercise reasonable care to avert the threatened harm. "Scope of employment" is defined as, among other things, "the field of action in which a servant is authorized to act out in the master-servant relationship." BLACK'S LAW DICTIONARY 1374 (8th ed. 2004). This is similar to the definition applied to "course of employment" in the law of workers' compensation: "[T]he time, place, and circumstances under which the accident occurs." Strother v. Morrison Cafeteria, 383 So.2d 623, 624 (Fla.1980). It follows that if an injury takes place while an employee is outside the scope of employment, the employer cannot be held responsible for same.
In regard to what acts are within the scope or course of employment, we find helpful cases applying that term within the context of workers' compensation claims, which this court has found instructive when considering actions in tort, particularly those involving the doctrine of respondeat superior. See Freeman v. Manpower, Inc., 453 So.2d 208 (Fla. 1st DCA 1984); Saudi Arabian Airlines Corp. v. Dunn, 438 So.2d 116 (Fla. 1st DCA 1983). Thus, when a worker's injury occurs while he or she is going to or coming from the place of employment, the injury is not generally considered compensable. As explained by Professor Larson, "[w]hile admittedly the employment is the cause of the worker's journey between home and factory, it is generally taken for granted that workers' compensation was not intended to protect against all the perils of that journey." 1 ARTHUR LARSON & LEX K. LARSON LARSON'S WORKERS' COMPENSATION LAW § 13.01 at 13-2, 3 (2004). Similarly, under the doctrine of vicarious responsibility, the law is well established that an employee driving to and from work is not within the scope of employment so as to impose liability on the employer. Foremost Dairies, Inc. of the S. v. Godwin, 158 Fla. 245, 26 So.2d 773 (1946); Freeman, 453 So.2d at 209.
No doubt the general rule absolving the employer from responsibility for the injury of an employee not in the course of employment was based in large measure on *844 the policy consideration of the attenuated degree of control over the employee's actions, particularly while driving an employee-owned vehicle. If no liability for compensation is fastened upon an employer by the workers' compensation system, a process based not on fault but on the connection between the injury and the employment, for an injury suffered by an employee while going to or coming from work, we similarly cannot conclude that the law of negligence, requiring the showing of a defendant's fault, places liability on an employer for an injury sustained by its employee outside the scope of employment based only upon the employer's knowledge of the threatened harm.
Under the facts alleged in plaintiff's complaint, the accident did not occur in the scope or course of employment; therefore, we cannot conclude as a matter of law that the employer's act in ordering Hernandez to report to work "right away" created a foreseeable risk of harm. The hospital's demand was not accompanied by an explicit threat that if she failed to comply she would be subject to termination, nor did it include an express order that she drive herself immediately to work. Taking the allegations as stated and all reasonable inferences derived therefrom, we may assume that Hernandez retained the choice to decline the directive and suffer any potential consequences therefrom, or to seek a different means of transportation than driving her own automobile. Because no duty to Hernandez arose from the hospital's conduct in ordering her to proceed to work immediately, the order dismissing the complaint is in all respects.
AFFIRMED.
DAVIS and HAWKES, JJ., concur.
NOTES
[1] The complaint is silent concerning whether appellant drove herself to the hospital during her normally scheduled work days.