DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**VINCENT CHARLES SALERNO,** in his individual capacity,
and as Personal Representative of
**THE ESTATE OF SUSAN M. SALERNO,**
Appellant,

v.

**DEL MAR FINANCIAL SERVICE, LLC; GLADSTONE LAW GROUP, P.A.,**
and **SOUTH REGIONAL TRANSPORTATION AUTHORITY,**
Appellees.

No. 4D17-305

[June 6, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Donald W. Hafele, Judge; L.T. Case No. 502015CA006907XXXXMBAG.

Richard R. Widell, Winchester, VA, for appellant.

Hinda Klein of Conroy Simberg, Hollywood, for appellees Del Mar Financial Service, LLC and Gladstone Law Group.

WARNER, J.

The trial court dismissed appellant Estate's complaint charging the employer of the deceased with negligence in her death. The complaint alleged that the employer served alcohol to the deceased during working hours, with knowledge that she was an alcoholic, and then failed to provide supervision for her when the employer ejected her from the premises and she was hit by a train while walking home. Appellant attempts to state a cause of action based upon section 768.125, Florida Statutes (2013), but that statute does not create a cause of action nor is it applicable to these circumstances. Although there is a special relationship between an employer and employee and a duty to protect the employee from imminent harm within the scope of employment, there is no similar duty when the employee is going and coming from work. The employer has breached no legal duty to the employee. We affirm.

"Because a ruling on a motion to dismiss for failure to state a cause of action is an issue of law, it is reviewable on appeal under the *de novo* standard of review." *Regis Ins. Co. v. Miami Mgmt., Inc.*, 902 So. 2d 966, 968 (Fla. 4th DCA 2005). When ruling on a motion to dismiss for failure to state a cause of action, the court must accept the allegations of the complaint as true. *Id.*

The second amended complaint alleged that the decedent, Susan Salerno, was employed as a paralegal by both Del Mar Financial Service, LLC, a legal documentation support firm, and Gladstone Law Group, a foreclosure law firm (referred to hereafter as the "employers"). The complaint alleged the employers maintained a bar on their premises and encouraged employees to drink alcoholic beverages during the work day to entice them to work additional hours and produce more work product. It alleged that the employers knew, or should have known, that the deceased was addicted to alcohol because she was required to attend AA meetings. On June 19, 2013, the employers served the deceased so many drinks that she became intoxicated and agitated. At that point, other employees escorted her out of the building, but they provided no assistance. She could not reenter the building because her access had been revoked. The deceased began walking in the direction of her home, which was ten miles away. A train employee observed the deceased walking along the railroad tracks where she was struck by an oncoming train.

The Estate alleged that the employers were negligent in serving the employee alcoholic beverages within the scope of her employment, but then removing her from her place of employment without monitoring her safety or providing her transportation home. It claimed that it was foreseeable that she would walk and be struck by a train. The Estate demanded damages for her wrongful death.

The employers moved to dismiss the second amended complaint on grounds that no cause of action could be stated because section 768.125, Florida Statutes (2013), provides only a cause of action against alcohol "vendors," not a social host or business that gratuitously serves alcohol. Section 768.125 provides:

Liability for injury or damage resulting from intoxication

A person who sells or furnishes alcoholic beverages to a person of lawful drinking age shall not thereby become liable for injury or damage caused by or resulting from the intoxication of such person, except that a person who willfully and unlawfully sells or furnishes alcoholic beverages to a

2

person who is not of lawful drinking age or who knowingly serves a person habitually addicted to the use of any or all alcoholic beverages may become liable for injury or damage caused by or resulting from the intoxication of such minor or person.

The trial court granted the motion and dismissed the second amended complaint with prejudice for failure to state a cause of action, agreeing with the employers that section 768.125 did not create a cause of action and a business does not otherwise owe a duty to an inebriated person, except in the limited circumstance that the intoxicated person is inert, citing *Preferred National Insurance v. Fat Investors, Inc.,* 842 So. 2d 1068 (Fla. 4th DCA 2003). The Estate now appeals.

The Estate first argues that section 768.125 does not shield the employers from liability. We agree that the statute does not shield the employers from liability from a duty they might otherwise have, because the statute is inapplicable to the employer in this situation. The statute created a limitation on the existing common law duty of *vendors* of alcohol. *See Armstrong v. Munford, Inc.*, 451 So. 2d 480, 481 (Fla. 1984); *Migliore v. Crown Liquors of Broward, Inc.*, 448 So. 2d 978, 980 (Fla. 1984). The statute also dealt with the serving of alcohol by social hosts. In *Bankston v. Brennan*, 507 So. 2d 1385, 1387 (Fla. 1987), the court held that the statute did not create a cause of action against a social host who served alcohol to a minor. Later, the court concluded that it also did not create a cause of action for a social host serving alcohol to a known alcoholic. *See Dowell v. Gracewood Fruit Co.*, 559 So. 2d 217, 218 (Fla. 1990). As the employers are neither vendors of alcohol nor could they be considered social hosts under these circumstances, the statute has no application.

The Estate contends that *Carroll Air Systems, Inc. v. Greenbaum*, 629 So. 2d 914 (Fla. 4th DCA 1993), is controlling. However, that case does not apply to the factual allegations of this complaint. In *Carroll*, an employer was held vicariously liable for the actions of its employee in driving while intoxicated and causing a fatal accident. *Id.* at 915-16. The employee had attended a business meeting where alcohol was served. *Id.* at 915. *The employee was found to be in the course and scope of his employment when the accident happened. Id.* at 916. Vicarious liability of the employer arose because the employer had the ability to control the employee, but it failed to exercise that control when it let the employee drive while intoxicated. *Id.* at 917.

*Carroll* is distinguishable, because the employee was acting within the course and scope of his employment. Liability was fixed on the employer,

not because the employer served alcohol and the employee was intoxicated, but because the employer allowed the employee to drive *in the course and scope of his employment* while intoxicated. *Id.* ("[T]he 'fault' of the employer was not in the furnishing of the drinks but in its knowledge, actual or constructive, that Mills was intoxicated and was not in a condition to drive."). Here, the deceased was not in the scope of her employment when she was walking home along the railroad tracks.

The Estate also argues that the employer had a "heightened duty of care" to its employee, which it breached by serving her alcohol and then ejecting her from the premises without supervision to go home. The question is whether there is such a duty of supervision on an employer where the injury to the employee occurs outside the scope of employment.

Although we have found no Florida cases which are directly on point, in *Hernandez v. Tallahassee Medical Center, Inc.*, 896 So. 2d 839 (Fla. 1st DCA 2005), the court addressed the issue of the duty of an employer to an employee travelling to her place of employment. Hernandez, a surgical nurse at the medical center, suffered from an epileptic-seizure disorder, which was known to the hospital and which prevented her from driving to work. *Id.* at 840. She would normally take a taxi and be reimbursed by the hospital. *Id.* She also had to take her daughter to daycare before reporting to work. *Id.* On the day of the accident, she reported that she was sick with symptoms of her disorder. *Id.* at 840-41. However, the hospital ordered her to report to work, although it knew that she likely would have to drive herself that day, to take her child to daycare before reporting. *Id.* at 841. She drove to work, but she suffered a seizure along the way, resulting in an accident in which she suffered injuries. *Id.* She sued the hospital, alleging negligence and basing her complaint on the theory that the hospital's conduct created a foreseeable zone of risk, placing on the defendant the duty to protect against that risk. *Id.* Noting that the foreseeability of the risk alone does not create a duty, the court explained that a plaintiff must show that the "defendant's conduct created or controlled the risk." *Id.* As there was a special relationship of employer and employee, the court addressed the question of whether the hospital's conduct created the foreseeable zone of risk, thus giving rise to the duty to protect against the harm.

The court in *Hernandez* looked to Restatement (Second) of Torts § 314B (1965), which provides:

> (1) If a servant, *while acting within the scope of his employment*, comes into a position of imminent danger of serious harm and this is known to the master or to a person

4

who has duties of management, the master is subject to liability for a failure by himself or by such person to exercise reasonable care to avert the threatened harm.

*Id.* at 843 (emphasis in original). Commenting on the rule, the court noted:

> It is important to observe that the duty the employer owes to the employee under sections 314B and 512 is conditioned upon the employee "acting within the scope of his employment." As a consequence, if the employee's actions cannot be said to be within the scope or course of his or her employment, no duty is placed on the employer to exercise reasonable care to avert the threatened harm. "Scope of employment" is defined as, among other things, "the field of action in which a servant is authorized to act out in the master-servant relationship." BLACK'S LAW DICTIONARY 1374 (8th ed. 2004). This is similar to the definition applied to "course of employment" in the law of workers' compensation: "[T]he time, place, and circumstances under which the accident occurs." *Strother v. Morrison Cafeteria*, 383 So. 2d 623, 624 (Fla. 1980). It follows that if an injury takes place while an employee is outside the scope of employment, the employer cannot be held responsible for same.

*Id.* Looking to worker's compensation law, the court noted that travelling to and from work was not considered to be in the course and scope of employment:

> No doubt the general rule absolving the employer from responsibility for the injury of an employee not in the course of employment was based in large measure on the policy consideration of the attenuated degree of control over the employee's actions, particularly while driving an employee-owned vehicle. *If no liability for compensation is fastened upon an employer by the workers' compensation system, a process based not on fault but on the connection between the injury and the employment, for an injury suffered by an employee while going to or coming from work, we similarly cannot conclude that the law of negligence, requiring the showing of a defendant's fault, places liability on an employer for an injury sustained by its employee outside the scope of employment based only upon the employer's knowledge of the threatened harm.*

*Id.* at 843-44 (emphasis added). As a result, Hernandez was not within the scope of employment when she was travelling to work, and the hospital owed no duty to Hernandez, even though it ordered her to report to work, knowing that she had seizures and was not supposed to drive. *Id.* at 844.

*Hernandez* involved travelling to work, but the same analysis would apply to travelling from work, as in the case here. The accident occurred while the deceased was walking down the railroad track on her way home. It was outside the scope of her employment. While she became intoxicated during her employment, drinking alcohol was not required in her position, but simply an "enticement" to get her to work longer. She voluntarily drank to the point of intoxication. Although she was ejected from the premises by other employees when she became agitated, she was not in imminent danger of serious harm until she began to walk home along the railroad tracks, which was voluntary on her part. Just as in *Hernandez*, the employers owed no duty because she was not in the scope of her employment when the accident occurred.

Only one court has found that an employer may be liable where an employee is injured travelling away from work. In *Bardy v. Walt Disney World Co.*, 643 So. 2d 46, 47 (Fla. 5th DCA 1994), Bardy, a Disney employee, became intoxicated while attending a staff party on the Disney premises. He went to his car to lie down. *Id.* A security guard found him and ordered him to leave the premises. *Id.* When Bardy told him that he was intoxicated, the guard demanded that he drive away immediately or be arrested. *Id.* Bardy drove off the premises and got into an accident only 500 feet from the parking lot, causing himself injuries. *Id.* The Fifth District reversed a summary final judgment in favor of Disney. It concluded that Disney had a duty to its employee and relied on the fact that the security guard ordered an intoxicated person to drive the vehicle, finding an act of misfeasance, rather than nonfeasance:

> Disney is not free from all liability as a matter of law. Bardy was an employee of Disney, an invitee on Disney property for social purposes (at least until the invitation was revoked by the guard), and the alcohol he drank (thirty 16 oz. cups of beer) had been supplied by Disney. *More important, it was an employee or agent of Disney who allegedly ejected him from the property, ordering him to move the motor vehicle. The driving of a motor vehicle by an intoxicated person is not only obviously perilous to the driver but to others as well,* and is a violation of law.

6

*Id.* at 48 (emphasis added). However, *Bardy* is clearly distinguishable from the present case, where the intoxicated deceased was not ordered to leave the work premises in a vehicle, a dangerous instrumentality.

We agree with *Hernandez* and conclude that in Florida there is no common law cause of action against the employers under the facts of this case. The deceased was voluntarily intoxicated. The employers did not require her to drink alcoholic beverages, and they did not place her in a dangerous instrumentality. Walking down the railroad track was an act of her own volition and remote from her employment. The accident was tragic, but the employers had no legal duty to the employee under the circumstances.

*Affirmed.*

MAY and DAMOORGIAN, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***